**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **MORNINGWARE, INC.**, an Illinois corporation, | ) ) ) |
|  | ) **CIVIL ACTION NO.:** _____ |
| Plaintiff, | ) ) Jury trial Demanded |
| v. | ) ) ) |
| **HEARTHWARE HOME PRODUCTS, INC.**, an Illinois corporation, | ) ) ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, Morningware, Inc. (referred to herein as "MWI"), in its Complaint against, Defendant, Hearthware Home Products, Inc. (referred to herein as "Hearthware"), alleges as follows:

**INTRODUCTION**

1. This is an action for false representation, unfair competition, and deceptive trade practices, and other state causes of action arising from Hearthware trading on MWI's goodwill through Hearthware's participation in Pay-per-Click advertising ("PPC") such as AdWords and Search Marketing programs offered by various search engine providers.

2. In particular, Hearthware has secured the right to have its advertisement and associated website link displayed higher in rank than links to MWI's website by using MWI's MORNINGWARE trademark, or variations thereof.

3. Accordingly, whenever an Internet searcher conducts a search by entering MWI's MORNINGWARE mark or variations thereof on various search engines (*e.g.,* without limitation,

1

Google, Yahoo, AOL, and MSN), Hearthware's advertisement and website is prominently displayed over links to MWI's website. As such, Hearthware's participation in these PPC programs that use MWI's mark in order to trade on MWI's goodwill results in consumer confusion and diverts users away from MWI's website and to Hearthware's website.

4. MWI therefore requests that this Court enjoin the conducts complained of herein, enjoin Hearthware from its unfair competition and deceptive practice, award equitable relief to remedy the past and ongoing damage caused by Hearthware's deception of customers and diversion of business, and award to MWI all damages allowed by law.

## THE PARTIES

### Morningware, Inc.

5. Plaintiff Morningware, Inc. ("MWI") is a corporation organized under the laws of the State of Illinois, with its principal place of business at 1699 Wall Street, Mt. Prospect, Illinois 60056.

6. MWI markets, advertises, and sells a variety of consumer products, such as counter-top electric ovens, in the United States and elsewhere throughout the world by using mediums including television infomercials, television shopping programs, the Internet, and retailers.

7. As such, MWI has used the MORNINGWARE mark since at least 2002 in the United States in connection with counter-top electric ovens.

8. MWI sells counter-top electric ovens to authorized retailers at numerous retail locations throughout the United States.

9. MWI promotes its counter-top electric ovens on-line through a website located at www.morningware.com as a further means of promoting its products. Its other non-Internet

related promotional activities are intended to work in tandem with its Internet website, so that potential customers who learn of MWI through its promotional retail activities can quickly and conveniently gain additional information about MWI through the Internet website, as well as contact MWI for more information and to begin forming a customer relationship by requesting a quote.

10. Through extensive and continuous sales, promotion, and use, the MORNINGWARE mark has become associated with MWI and identifies MWI as the source of the goods and services offered in connection with the mark.

11. As a result of MWI's extensive and continuous use of the MORNINGWARE mark, it has become, and continues to be, a valuable property right of MWI.

12. At all times relevant to this Complaint, Defendant is and has been well aware of the goodwill represented and symbolized by the MORNINGWARE mark.

13. The Defendant, Hearthware, is not now, nor has it ever been, the owner of the MORNINGWARE mark or an authorized distributor of MORNINGWARE branded counter-top electric oven products.

**Hearthware Home Products, Inc.**

14. On information and belief, Defendant Hearthware Home Products, Inc. ("Hearthware") is a corporation organized under the laws of the State of Illinois, with its principal place of business at 880 Lakeside Drive, Gurnee, Illinois 60031.

15. Hearthware operates an Internet website at www.mynuwaveoven.com.

16. Through Hearthware's participation in the PPC search programs and illegal use of MWI's trademark, and variations thereof, Hearthware arranges to have an advertisement and link

for its website displayed higher than links to MWI's website in various search engine search results for "*morningware*" or "*morning ware*."

17.     Hearthware is MWI's next nearest competitor in the counter-top electric oven products.

18.     Hearthware has used a PPC advertisement that appears above the link to MWI's website, wherein the advertisement reads: "The Real NuWave® Oven Pro ***Why Buy an Imitation***? 90-Day Gty." Printouts from the search engines displaying the website are attached hereto as Exhibit A.

## JURISDICTION AND VENUE

19.     Subject matter jurisdiction is proper in this Court inasmuch as this action asserts violations under 15 U.S.C. §§ 1117 and 1125. Therefore, this Court has jurisdiction over those claims, and related unfair competition claims pursuant to the provisions of 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, and 1338(b). All other claims in this action arise from the same transaction or occurrence, such that this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

20.     This Court may exercise personal jurisdiction over Hearthware because Hearthware is organized in this state and has a principle place of business in Illinois.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), since: (a) Hearthware has its principal place of business within this district; (b) the acts complained of took place within this district; and (c) Hearthware is subject to personal jurisdiction here.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.     Google, Yahoo, AOL, and MSN operate Internet search engines which allow Internet users to locate websites that correspond with entered "keywords," or search terms. As a

result, links to related websites are usually displayed in order of decreasing relevance as determined by the search engine provider, with the most relevant websites being listed first.

23.     By using search engines such as Google, Yahoo, AOL, and MSN, Internet users enter the subject matter they are interested in, the companies they are looking for, or the goods and services they wish to buy. This allows search engines to earn an overwhelming percentage of their revenue from the sale of contextual advertising, which permits companies to place their advertising in front of consumers.

24.     As an example, as part of its business, Google offers a keyword-triggered advertising program called "AdWords." AdWords enables advertisers to purchase or bid on certain keywords. Then, when an Internet user enters those keywords in Google's search engine, the program generates links, known as "Sponsored Links," to the advertisers' websites. Sponsored links appear at the top and on the margins of Google's search-result pages. In many instances, the search results pages are designed so that the "Sponsored Link" display is inconspicuous, confusing and ambiguous so it is not apparent who "sponsors" these links and whether a sponsor of the link is associated in any way with the company that is the subject of the search. Whenever an Internet user clicks on a Sponsored Link, the corresponding advertiser must pay Google. The same or substantially similar policies also hold true for other search engines such as, without limitations, Yahoo, MSN, and AOL.

25.     Google's own materials reveal the operation of its AdWords program, and of the ability of users to inappropriately trade on the goodwill of their competitors. For example, according to Google's materials about its AdWords program:

- "Find buyers searching for what you sell. Google AdWords ads connect you with new customers at the precise moment when they're looking for your products or services."

- "No one can lock in the top position [in the display results]. User clickthrough rates and CPC ("cost-per-click pricing") help determine where your ad is shown. The most relevant ads rise to the top." Similarly, "[r]ank is determined by a combination of several relevance factors including CPC and clickthrough rate. If an ad is irrelevant to users, they won't click on it and it will move down the page. Your relevant ads will gain higher positions on the page, at no extra cost to you." Or again, "[y]our keyword-targeted ad's position is determined by your ad's maximum cost-per-click (CPC) and Quality Score. Increasing performance factors such as your maximum CPC and/or Quality Score will improve your ad's position."

- "AdWords Discounter takes care of your campaign for you, dynamically raising and lowering your CPC within range you specify to keep you in the position you want."

- "General keywords will generate the most impressions, but will often result in the fewest number of clicks."

26. Google's trademark policy for its AdWords program specifically notes that "the advertisers themselves are responsible for the keywords and ad content that they choose to use." As such, Hearthware remains liable for its deliberate decision to use MWI's trademark as a keyword in Google's AdWords program.

**HEARTHWARE'S WRONGFUL ACTS**

27. Here, Hearthware has used MWI's trademark, or variations thereof, as a keyword for use in Google's AdWords program. Thus, if a user enters either "*morningware*" or "*morning ware*" as a search phrase in Google, Hearthware's ad appears before a link to MWI's website in the search results. See Exhibit A.

28. The fact that Hearthware's ad occupies the topmost position next to the link for MWI's website in the search results shows, according to Google's own literature, that Hearthware is both willing to pay for the ad, and that the ad must have a relatively high clickthrough rate.

29. Worse, the ad content of the link to Hearthware's website, www.mynuwaveoven.com, states, "The Real NuWave® Oven Pro *__Why Buy an Imitation__*? 90-Day Gty." (*Emphasis added*). See Exhibit A.

30. On information and belief, the topmost placement of Hearthware's website, www.mynuwaveoven.com, in the search results for keywords "*morningware*" and "*morning ware*" coupled with the statement that *__"Why Buy an Imitation?"__* in the mynuwaveoven.com website falsely asserts product superiority specifically over MWI's products, which misleads and/or confuses consumers into *believing that MWI's products are inferior to Hearthware's because they are "Imitations," and thus fakes, of Hearthware's products*, which they are not.

**The Harm to MWI**

31. MWI has not given Hearthware permission to use its trademark, or variations thereof, for the promotion or sale of its own products and services. Through its use of the MWI marks as keywords, Hearthware seeks to exploit the hard-earned goodwill of MWI and its products and services. Hearthware's use of MWI's trademark, and variations thereof, for use in

7

the AdWords program, as well as other search engine PPC programs, coupled with Hearthware's false implication that MWI's products are "*Imitations*," is intended to divert consumers from the website they intend to visit—*e.g.*, the MWI website—to Hearthware's website. Thus, Hearthware is free-riding on the goodwill and reputation of MWI.

32. Moreover, Hearthware's false implication that MWI's products are "Imitations," and, thus, inferior in quality, have damaged MWI in an amount to be determined at trial, and will continue to damage MWI, unless restrained by this Court. Accordingly, MWI is entitled to an injunction, as set forth below, and as a consequence of Defendant's willful conduct, to an award against Defendant in an amount of three times MWI's damages, and MWI's attorneys' fees and costs incurred in connection with this action.

33. By taking steps to ensure that its ad appears topmost the search results for "*morningware*" or "*morning ware*," Hearthware's actions are inherently deceptive and mislead and/or confuse consumers into believing falsely that Hearthware's own website is sponsored or authorized by and/or originating with MWI. Hearthware's actions also dilute the ability of the MWI's trademark to identify MWI to consumers as a source of its products and services.

34. Hearthware's conduct also constitutes a deceptive "bait and switch." Once a potential customer enters the mynuwaveoven.com site from the search result ad, MWI's products are not offered or mentioned. The MORNINGWARE mark is viewable by search engines but not by consumers reading the web pages.

35. On information and belief, potential customers have visited Hearthware's website mynuwaveoven.com using the search terms "*morningware*" or "*morning ware*," believing that the MORNINGWARE branded counter-top electric ovens are available from Hearthware.

36. When the user clicks on the sponsored link, he or she is directed to Hearthware's website www.mynuwaveoven.com, selling counter-top electric ovens, *none* of which are MWI's MORNINGWARE counter-top electric ovens.

37. Hearthware's actions divert customers from MWI's website, erode the distinctiveness of MWI's marks, and impair MWI's honest and good faith efforts to promote and sell its products on the Internet. Hearthware's actions have caused damage and irreparable injury to MWI.

38. In addition to harming MWI's reputation and the value of its mark, Hearthware has realized and continues to realize profits and other benefits rightfully belonging to MWI.

## FIRST CAUSE OF ACTION

Lanham Act – Unfair Competition under § 1125(a)

39. Plaintiff Morningware, Inc. repeats and re-alleges each allegation contained in the preceding paragraphs.

40. Hearthware's unlawful acts constitute use in commerce.

41. Hearthware's unlawful acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Hearthware with MWI as to the origin, sponsorship, or approval of Hearthware's products.

42. Hearthware's acts are causing irreparable injury to MWI, for which there are no adequate remedy at law, and will continue to do so unless Hearthware's use of the MORNINGWARE mark, and variations thereof, is enjoined by this Court.

43. Upon information and belief, Hearthware's conduct as described above has been willful, wanton, reckless, and in total disregard for MWI's rights.

44. Hearthware has engaged in unlawful acts that constitute unfair competition and false designation of origin in violation of § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), and MWI is entitled to Hearthware's profits resulting from those actions, the damages caused to MWI as a result of those action, the costs of the action, and reasonable attorneys' fees in accordance with 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

Lanham Act – Product Disparagement under 15 U.S.C. § 1125(a)(1)(B)

45. Plaintiff Morningware, Inc. repeats and re-alleges each allegation contained in the preceding paragraphs.

46. Hearthware made material misrepresentations or misdescriptions of fact about the nature or character of MWI's products.

47. Hearthware used the false or misleading statements in commerce.

48. Hearthware made the representations in the context of commercial advertising or promotion.

49. Upon information and belief, Hearthware, conduct as described above, has been willful, wanton, reckless, and in total disregard for MWI's rights.

50. Hearthware has engaged in unlawful acts that constitute unfair competition and false designation of origin in violation of § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), and MWI is entitled to Hearthware's profits resulting from those actions, the damages caused to MWI as a result of those action, the costs of the action, and reasonable attorneys' fees in accordance with 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

Violation of the Deceptive Trade Practices Act of Illinois, 815 ILCS 510/2

51. Plaintiff Morningware, Inc. repeats and re-alleges each allegation contained in the preceding paragraphs.

52. The advertising and promotion noted above constitute representations made by Hearthware regarding the characteristics of the MWI products, which causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

53. The advertising and promotion noted above disparages MWI's products by falsely representing that MWI's products are "Imitations."

54. Upon information and belief, Hearthware, conduct as described above, has been willful, wanton, reckless, and in total disregard for MWI's rights.

55. Such actions constitute a violation of Illinois, 815 ILCS 510/2, and MWI is entitled to damages for same.

56. Furthermore, on information and belief, Hearthware's violation of Illinois, 815 ILCS 510/2 was willful and deliberate, and therefore, MWI should be entitled to the costs of this action, and reasonable attorneys' fees for same pursuant to Illinois, 815 ILCS 510/3.

### FOURTH CAUSE OF ACTION

#### COMMON-LAW UNFAIR COMPETITION

57. Plaintiff Morningware, Inc. repeats and re-alleges each allegation contained in the preceding paragraphs.

58. The acts of Hearthware have caused unfair and unjust commercial injury on MWI.

59. Because of Hearthware's actions, MWI has been, and will be, forced to take corrective action in the marketplace to correct Hearthware's misrepresentations regarding MWI's

product, has lost business and potential business as a result of that conduct, and has incurred commercial and marketplace damages as a continuing result of same.

60. Hearthware's actions constitute a violation of the common-law tort of unfair competition.

61. MWI is entitled to damages as a result of Hearthware's unfair conduct.

### FIFTH CAUSE OF ACTION

### COMMERCIAL DISPARAGEMENT BY HEARTHWARE

62. Plaintiff Morningware, Inc. repeats and re-alleges each allegation contained in the preceding paragraphs.

63. Hearthware's statement in its ad content that reads: "*Why Buy an Imitation?*" is to disparage MWI's products as fakes.

64. On information and belief, Hearthware has a pattern or practice of disparaging other competitors by alleging that their products are also inferior in quality because they are "*Imitations*." Discovery may show that Hearthware has used, and continues to use, other keyword triggering advertisements in the PPC programs to unfairly compete with other competitors in the counter-top electric oven markets.

65. Hearthware's ad content injured the reputation of MWI, and likely other competitors.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Morningware, Inc. demand a judgment in its favor and against Defendant Hearthware Home Products, Inc., and request that this Court:

A. Order, adjudge and decree that Hearthware has violated § 43(a) of the Lanham Act;

    B.    Order, adjudge and decree that Hearthware has violated Illinois, 815 ILCS 510/2;

    C.    Order, adjudge and decree that Hearthware has committed the common-law tort of unfair competition;

    D.    Order, adjudge and decree that Hearthware has commercially disparaged MWI's products as inferior in quality by asserting them as "Imitations;"

    E.    Issue a permanent injunction prohibiting Hearthware and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with them, from:

        a. Misrepresenting the nature and characteristics of the MWI products; or,

        b. Advertising or promoting the Hearthware products in a false or misleading manner;

    F.  Issue an order:

        a. Directing Hearthware to disseminate, in a form to be approved by the Court, advertising designed to correct the aforementioned false and misleading claims made by Hearthware in its advertising to date for Hearthware;

        b. For award of compensatory damages;

        c. For reasonable attorneys' fees under the Lanham Act and Illinois 815 ILCS 510/3;

        d. For an award of punitive damages;

        e. For restitution and disgorgement of all wrongfully acquired revenues;

        f. For costs for suit; and,

        g. For such other or further relief as this Court may deem equitable and proper.

## JURY DEMAND

Plaintiff Morningware, Inc. demands trial by jury of all issues triable to a jury.

DATED:  July 20, 2009                Respectfully Submitted,


s/Edward L. Bishop/
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
EDWARD BISHOP & ASSOCIATES, LTD.
1320 Toward Road
Schaumburg, IL 60173
Tel:  (847) 925-9333
Fax:  (847) 925-9227