**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Morningware, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 09-4348** |
| | ) | |
| Hearthware Home Products, Inc., | ) | |
| | ) | |
| Defendant. | ) | **Judge: St. Eve** |
| -------------------------------------------------------- | ) | |
| | ) | |
| IBC-Hearthware, Inc. | ) | **Jury Trial Demanded** |
| d/b/a Hearthware Home Products, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Consolidated** |
| v. | ) | |
| | ) | |
| Morningware, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**MORNINGWARE'S ANSWER AND REPLY TO
HEARTHWARE HOME PRODUCTS' COUNTERCLAIM**

The Plaintiff Morningware, Inc. (hereinafter "Morningware") hereby responds to the

claims (*i.e.*, Counterclaims) asserted by Defendant Hearthware Home Products, Inc. (hereinafter

"Hearthware") in reassigned Case No. 09-cv-04948, as follows:

1.      This is a claim for: (a) patent infringement arising under the patent laws of the
United States, Title 35 of the United States Code, including 35 U.S.C. §§ 271 and 281; (b)
violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (c) violation of the Illinois
Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 *et seq*.); and (d) unfair competition
under the common law of Illinois.

**ANSWER:**      Morningware admits this is a claim for the stated laws but denies any violation of

said laws.

1

2.     Plaintiff Hearthware is a corporation organized under the laws of State of Illinois, with its principal place of business at 880 Lakeside Drive, Gurnee, Illinois 60031.  Hearthware owns all right, title and interest in and has standing to sue for infringement of  United States Patent No. 6,201,217 ("the '217 patent"), entitled "Counter-Top Electric Cooker" issued on March 13, 2001.

**ANSWER:**     Morningware admits Hearthware's organization and address.  Morningware does

not have sufficient information to either admit or deny Hearthware's claimed ownership of the

'217 patent, and therefore denies the same.

3.     On information and belief, Defendant Morningware is organized under the laws of the State of Illinois, with its principal place of business at 1699 Wall Street, Mt. Prospect, Illinois 60056.  On information and belief, Morningware does substantial business in this judicial district including the marketing, sale, offering for sale and importation of counter-top electric cookers, including the Halogen Convection Oven Model HO-1200 ("Morningware Halogen Oven") accused of patent infringement and the other violations at issue in this case.

**ANSWER:**     Morningware's address is admitted.  Morningware admits that Morningware has

marketed, sold, offered for sale, and imported the Halogen Convection Oven Model HO-1200.

Morningware denies that such activities constitute patent infringement and the other violations at

issue in this case.

4.     The First Claim for Relief arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a).

**ANSWER:**     Morningware admits that the First Claim for Relief arises under the stated laws

but denies any violation of said laws.  Morningware admits the alleged federal subject matter

jurisdiction.

5.     The Second Claim for Relief arises under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq*.  This Court has jurisdiction over this Claim of Relief under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**    Morningware admits that the Second Claim for Relief arises under the stated laws but denies any violation of said laws.  Morningware admits the alleged federal subject matter jurisdiction.


6.    All other claims in this action arise from the same transaction or occurrence, such that this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

**ANSWER:**    Morningware admits that all other claims in this action arise from the alleged same transaction or occurrence but denies any wrongdoings.  Morningware admits the alleged federal supplemental jurisdiction.


7.    This Court may exercise personal jurisdiction over Morningware because Morningware is organized in this state and has a principal place of business in Illinois.

**ANSWER:**    Admitted.


8.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) & (c), and 1400(b) because Morningware has its principal place of business within this district, the acts complained of took place within this district, and Morningware is subject to personal jurisdiction here.

**ANSWER:**    Admitted.


9.    On March 13, 2001, United States Patent No. 6,201,217 ("the '217 patent") entitled "Counter-Top Electric Cooker" was duly and legally issued by the U.S. Patent and Trademark Office to Hearthware.  Hearthware is the sole owner of all right, title, and interest in the '217 patent, including the right to for infringement.  A copy of the '217 patent is attached hereto and incorporated herein as Exhibit A.

**ANSWER:**    Morningware admits that a copy of the '217 patent issued by the U.S. Patent and Trademark Office is attached as Exhibit A.  Morningware denies that the '217 patent was "duly and legally issued by the U.S. Patent and Trademark Office to Hearthware."  Morningware does not have sufficient information to either admit or deny Hearthware's claimed ownership of the '217 patent, and therefore denies the same.

10.     Hearthware manufactures, advertises, promotes, markets, distributes and/or sells the NuWave Oven, which embodies the claims of the '217 patent.

**ANSWER:**     Morningware admits that Hearthware manufactures, advertises, promotes, markets, distributes and/or sells the NuWave Oven.  Morningware denies that the NuWave Oven embodies the claims of the '217 patent.

11.     Hearthware has sold counter-top ovens as the NuWave Oven since at least 2003.

**ANSWER:**     Morningware lacks knowledge or information sufficient to enable it to admit or deny Hearthware has sold counter-top ovens as the NuWave Oven since at least 2003, and therefore denies the same.

12.     Since at least as early as 2003, Hearthware has manufactured and sold the NuWave Oven with a distinctive non-functional combination of elements which is believed to be well known to Hearthware's customers and has become associated with the NuWave Oven. Exemplary pictures of NuWave Ovens with their distinctive appearance and design are attached hereto and incorporated herein as Exhibit B.

**ANSWER:**     Morningware admits that purported pictures attached as Exhibit B are the NuWave Ovens.  Morningware lacks knowledge as to what is "distinctive non-functional combination of elements" in the NuWave Oven, and therefore denies the rest.

13.     The Hearthware NuWave Oven's appearance and design constitute trade dress ("NuWave Trade Dress") which is distinctive and has been in use since at least 2003.

**ANSWER:**     Denied.  In particular, Morningware denies that the Hearthware NuWave Oven's appearance and design is distinctive.  Exemplary picture of the Flavorwave® Oven, which has been in use since at least as early as 2000 or earlier, having an identical or substantially identical appearance and design as to the Hearthware NuWave Oven is attached hereto and incorporated herein as Exhibit 1.

14. Since its introduction, the NuWave Oven has been a great commercial success for Hearthware. The NuWave Oven has been advertised, promoted and sold nationally.

**ANSWER:** Morningware lacks knowledge or information sufficient to enable it to admit or

deny the allegations set forth in Paragraph 14, and therefore denies the same.

15. As a result of its unique and distinctive trade dress, as well as Hearthware's extensive advertising and promotion of the NuWave Oven, the total image, shape, configuration, overall look, appearance and impression of the NuWave Oven with Hearthware and the Hearthware brand name, and Hearthware has acquired a valuable reputation and goodwill among the public as a result of such association.

**ANSWER:** Denied.

16. Hearthware has thus established an exclusive right to use the trade dress free from confusingly similar imitations that are calculated to deceive the public and injure Hearthware.

**ANSWER:** Denied.

17. Hearthware has gained common law trademark rights to the NuWave Trade Dress through its use, advertising and promotion.

**ANSWER:** Denied.

18. Upon information and belief, Morningware manufactures, advertises, promotes, markets, distributes and/or sells its Morningware Halogen Oven and features an appearance ("Morningware Appearance") as depicted in a picture attached hereto and incorporated herein as Exhibit C.

**ANSWER:** Admitted.

19. The Morningware Appearance is confusingly similar to and dilutive of the NuWave Trade Dress.

**ANSWER:** Denied.

20.     Upon information and belief, Morningware only recently began offering its Morningware Halogen Oven product featuring the Morningware Appearance, well after Hearthware began selling its NuWave Oven product with its NuWave Trade Dress.

**ANSWER:**     Denied.

21.     Upon information and belief, Hearthware alleges that Morningware has committed the actions describes herein in bad faith and with the intent to cause confusion and mistake; to deceive the public at large into believing that Morningware and/or the Morningware Infrared Halogen Oven product are affiliated, connected or associated with, and/or otherwise sponsored, approved, and/or authorized by, Hearthware; and to dilute the NuWave Trade Dress.

**ANSWER:**     Denied.

22.     Upon information and belief, Morningware had knowledge of the NuWave Trade Dress and its fame in connection with the NuWave Oven, and adopted the Morningware Appearance in connection with its infrared oven products in bad faith and with intent to cause confusion with and dilute the NuWave Trade Dress.

**ANSWER:**     Denied.

23.     On information and belief, Morningware has gained profits by virtue of its infringement of the NuWave Trade Dress.

**ANSWER:**     Denied.

24.     Hearthware has sustained damages as a direct and proximate result of Morningware's infringement of the NuWave Trade Dress in an amount to be proven at trial.

**ANSWER:**     Denied.

## **FIRST CLAIM FOR RELIEF**
### **(Infringement of the '217 Patent)**

25.     Hearthware realleges and incorporates by reference the allegations contained in paragraphs 1-12 and 18 as if fully set forth herein.

**ANSWER:**     No response necessary.  Morningware repeats its statements set forth hereinabove.

26.     Upon information and belief, Morningware has infringed and continues to infringe the '217 patent, either directly, by contributory infringement and/or by inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products, including the Morningware Halogen Convection Oven Model HO-1200, covered by the '217 patent.

**ANSWER:**     Denied.


27.     Morningware's acts of infringement have caused and continue to cause damage to Hearthware, and Hearthware is entitled to recover from Morningware the damages sustained by Hearthware as a result of Morningware's wrongful acts in an amount subject to proof at trial. Morningware's infringement of Hearthware's exclusive rights under the '217 patent will continue to damage Hearthware's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by this Court.

**ANSWER:**     Denied.


28.     Upon information and belief, Morningware's acts of infringement of the '217 patent have been willful and deliberate, rendering this an exceptional case under 35 U.S.C. § 285.

**ANSWER:**     Denied.


29.     Hearthware believes that Morningware will continue to infringe the '217 patent unless enjoined by this Court. Such infringing activity causes Hearthware irreparable harm and will continue to cause such harm without the issuance of an injunction.

**ANSWER:**     Denied.

### SECOND CLAIM FOR RELIEF
### (Trade Dress Infringement Under *The Lanham Act*)

30.     Hearthware realleges and incorporates by reference the allegations contained in paragraphs 1-24 as if fully set forth herein.

**ANSWER:**     No response necessary. Morningware repeats its statements set forth hereinabove.


31.     Hearthware, as the owner of all common law right, title and interest in and to the NuWave Trade Dress, has standing to maintain an action for trade dress infringement under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125(a)).

**ANSWER:**     Denied.

32.     Hearthware's NuWave Trade Dress has been prominently displayed as part of Hearthware's counter-top ovens.

**ANSWER:**     Morningware lacks knowledge or information sufficient to enable it to admit or deny the allegations set forth in Paragraph 32, and therefore denies the same.

33.     The NuWave Trade Dress is inherently distinctive and/or has acquired a secondary meaning, and distinguishes Hearthware's counter-top ovens from those offered by others.

**ANSWER:**     Denied.

34.     The NuWave Trade Dress is non-functional.

**ANSWER:**     Denied.

35.     Hearthware alleges that Morningware has, without authorization, on or in connection with its goods and services used in commerce the Morningware Appearance, which is confusingly similar to the NuWave Trade Dress, and which has caused and is likely to continue to cause confusion or mistake, or to deceive as to the affiliation, connection or association of Morningware with Hearthware, and/or as to the origin, sponsorship or approval of Morningware's goods or services, or commercial activities.

**ANSWER:**     Denied.

36.     Hearthware, upon information and belief, alleges that Morningware's acts have been committed with knowledge of Hearthware's exclusive common law rights and goodwill in the NuWave Trade Dress, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

**ANSWER:**     Denied.

37.     Hearthware has suffered, and, if Morningware is not enjoined from its wrongful acts of trade dress infringement, Hearthware will continue to suffer, great and irreparable injury, loss, and damage to its rights in and to the NuWave Trade Dress and the goodwill associated therewith for which it has no adequate remedy at law.

**ANSWER:** Denied. Additionally, Morningware has not engaged in any wrongful acts of trade dress infringement.

38.     As a result of Morningware's wrongful acts, Hearthware has suffered and will continue to suffer losses, including loss of business opportunities, and, if not preliminary and permanently enjoined, Morningware will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its wrongful acts.

**ANSWER:** Denied.

39.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and, as Hearthware has no adequate remedy at law, Hearthware is entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 118, including Morningware's profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

**ANSWER:** Denied.

### THIRD CLAIM FOR RELIEF
**(Violation of the Illinois *Uniform Deceptive Trade Practices Act*)**

40.     Hearthware realleges and incorporates by reference the allegations contained in paragraphs 1-24 and 30-39 as if fully set forth herein.

**ANSWER:** No response necessary. Morningware repeats its statements set forth hereinabove.

41.     This is a claim for violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*

**ANSWER:** Morningware admits that this is a claim for violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq*. but denies any violation of said laws.

42.     815 ILCS § 510/2(a) states, in relevant part, that: "A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: … (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; …."

9

**ANSWER:**     Admitted.


43.     Hearthware and Morningware are competitors.  Morningware's sale and offers for sale of their infringing Morningware Infrared Halogen Oven, as described above, have and will continue to create a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of their products by Hearthware.  Such sales and offers for sale have further created and will continue to create a likelihood of confusion or misunderstanding as to affiliation, connection, or association with or certification by Hearthware.

**ANSWER:**     Morningware admits that Hearthware is one of its competitors.  The remaining

allegations of Paragraph 43 are denied.


44.     As stated in Hearthware's Second Claim for Relief above, the aforementioned acts by Morningware constitute violations of Section 43(a) of the Lanham Act and, thus, also constitute violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2.

**ANSWER:**     Denied.


45.     On information and belief, Morningware has willfully and deliberately engaged in the complained of deceptive trade practices.  Such acts have irreparably injured and will continue to injure Hearthware unless enjoined by this Court.  Further, Hearthware should be entitled to the costs of this action and reasonable attorneys' fees pursuant to 815 ILCS 510/3.

**ANSWER:**     Denied.


**FOURTH CLAIM FOR RELIEF**
**(Violation of the Illinois *Common Law Of Unfair Competition*)**

46.     Hearthware realleges and incorporates by reference herein the allegations contained in the paragraphs 1-24 and 30-45 as if fully set forth herein.

**ANSWER:**     No response necessary.  Morningware repeats its statements set forth hereinabove.


47.     This is a claim for violations of Illinois' common law of unfair competition.

**ANSWER:**     Morningware admits that this is a claim for violations of the Illinois' common law

of unfair competition but denies any violation of said laws.

48.        Hearthware and Morningware are competitors.  Morningware's sale and offers for sale of their infringing Morningware Infrared Halogen Oven, as described above, have and will continue to create a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of their products by Hearthware.  Such sales and offers for sale have further created and will continue to create a likelihood of confusion or misunderstanding as to affiliation, connection, or association with or certification by Hearthware.

**ANSWER:**        Morningware admits that Hearthware is one of its competitors.  The remaining

allegations of Paragraph 48 are denied.

49.        As stated above, the aforementioned acts by Morningware constitute violations of Section 43(a) of the Lanham Act and, thus, also constitute violations of Illinois' common law of unfair competition.

**ANSWER:**        Denied.

50.        Morningware has and will continue to willfully and deliberately engage in the complained of acts of unfair competition.  Such acts have irreparably injured and will continue to injure Hearthware unless enjoined by this Court.

**ANSWER:**        Denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hearthware respectfully requests that this Court enter a judgment in its favor and against Defendant Morningware, and grant the following relief:

A.  A judgment that the '217 patent has been and continues to be infringed by Morningware;

B.  A judgment that Morningware's use of the Morningware Appearance infringes the NuWave Trade Dress under federal law;

C.  A judgment that Morningware's use of the Morningware Appearance dilutes the NuWave Trade Dress under the federal law;

D.  A judgment that Morningware has violated the Illinois Uniform Deceptive Trade Practices Act;

E.  A judgment that Morningware has committed the common law tort of unfair competition;

F.  The issuance of preliminary and permanent injunctions enjoining:

a. the aforesaid acts of patent infringement by Morningware, its officers, agents, servants, employees, predecessors, successors, divisions, subsidiaries and attorneys, and those persons acting in concert with them, including related individuals and entities, customers, representatives, dealers and distributors;

b. the aforesaid acts of trade dress infringement by Morningware, its officers, agents, servants, employees, predecessors, successors, divisions, subsidiaries and attorneys, and those persons acting in concert with them, including related individuals and entities, customers, representatives, dealers and distributors;

G. An award of damages and/or other monetary relief:
   a. for Morningware's infringement of the '217 patent (together with prejudgment interest from the date infringement began );

   b. an award of compensatory damages for Morningware's Lanham Act and state law violations in an amount to be determined at trial;

H. A finding that Morningware's infringement of the '217 patent was willful and deliberate;

I. A finding that Morningware's Lanham Act violations were willful and deliberate;

J. A finding that this case is exceptional under 35 U.S.C. § 285 and an award of all remedies available as a result;

K. A finding that this case is exceptional case within the meaning of 15 U.S.C. § 1117 and that Morningware's acts of trade dress infringement and dilution were knowing and willful, an award of all remedies available as a result;

L. An award of punitive damages;

M. An award of Hearthware's actual legal costs and reasonable attorney's fees associated with this suit; and

N. Such other and further relief as this Court or a jury may deem proper and just.

**ANSWER:**   Morningware denies that Hearthware is entitled to any relief sought in Paragraphs A to N.

## MORNINGWARE'S AFFIRMATIVE DEFENSES

51.   Plaintiff/Counterdefendant Morningware sets forth the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

52.     Defendant/Counterclaimant Hearthware's counterclaims fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement)

53.     Morningware has not and does not (a) literally infringe, (b) contributorily infringe, or (c) induce infringement of any valid and enforceable claim of the '217 patent.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity)

54.     The '217 patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 102, 103, and 112. Morningware reserves the right to assert additional grounds for the invalidity of the '217 patent if it discovers such grounds during the course of the litigation.

## FOURTH AFFIMATIVE DEFENSE
### (Unenforceability Due to Inequitable Conduct)

55.     The forgoing facts of paragraphs 56-112 set forth an independent basis for holding that inequitable conduct and/or fraud was committed during the prosecution of the '217 patent.  Since the '217 patent in this case derive from the fraudulent and/or intentional omissions, it should not be enforceable.

### Undisclosed U.S. Patent No. 4,350,874

56.     The U.S. Patent No. 6,201,217 patent ("the '217 patent"), issued from U.S. Patent Application Serial Number 09/290,150, as filed on April 12, 1999 by the law firm of Wood, Phillips, VanSanten, Clark & Mortimer.  A copy of the '217 patent is attached hereto and incorporated herein as Exhibit 2.

13

57.     The '217 patent issued to Jung S. Moon, Rong Liu, and Alan R. Kelley on March 13, 2001 and lists Hearthware as the assignee.

58.     During the prosecution of the '217 patent, no prior art was provided to the PTO by Mr. Moon, the prosecuting attorneys, or the other alleged inventors.

59.     On information and belief, the claimed subject matter of the '217 patent was described, in full or in part, in prior art more than one year prior to the April 12, 1999 filing date of the '217 patent.

60.     Specifically, the claimed subject matter of the '217 patent was described in full or in part within U.S. Patent No. 4,350,874 ("the '874 patent"), entitled "Hot Air Supply Type Electric Oven," filed on August 14, 1980, and issued and assigned to Imanishi Flexible Tube Mfg. Co., Ltd. (Exhibit 3).

61.     The '874 patent discloses an electric oven for cooking food, comprising a cooking enclosure including a metallic oven pan and the oven housing, a power head including a heating unit and a cooling fan, the cooling fan being directly exposed to the upper wall of the oven housing, and a base made of heat-resistant material.

62.     On information and belief, the '874 patent was material to the patentability of the '217 patent because the electric oven described in the '874 patent is similar or substantially similar to that in the '217 patent. Thus, a reasonable examiner would have determined that an electric oven described in the '874 patent was material to patentability of the '217 patent in that it may have affected the issuance of the '217 patent.

63.     On information and belief, the '874 patent was not cumulative of the prior art made of record during the prosecution of the application that issued as the '217 patent.

64.     According to the Patent Application Information Retrieval ("PAIR") in the PTO's website, the '874 patent underwent two *ex parte* reexamination proceedings in August 1994 and May 1996, requested by the '874 patent owner.

65.     According to the PAIR, these two *ex parte* reexaminations for the '874 patent were prosecuted by the same law firm that prosecuted the '217 patent.

66.     On information and belief, the prosecuting attorneys for the '217 patent, who are from the same law firm, knew or should have known the existence of the '874 patent and/or the two *ex parte* reexaminations relating thereto.

67.     On information and belief, the '874 patent was brought to Mr. Moon's, and/or Hearthware's attention by Hearthware's Intellectual Property attorneys, well before the '217 patent application was filed.

68.     On information and belief, Mr. Moon was involved in the prosecution of the '217 patent.

69.     On information and belief, during prosecution of the '217 patent and in breach of their duty, individuals involved in the prosecution of the '217 patent, specifically, Mr. Moon and the prosecuting attorneys, failed to advise the PTO the '847 patent.

70.     The '847 patent, individually or in combination with other references cited during the prosecution of the '217 patent, would invalidate at least one originally filed and/or issued claim of the '217 patent under 35 U.S.C. §§ 102 or 103.

71.     By way of example only, during prosecution of the '217 patent application, a March 13, 2000 Amendment asserted structural differences between the Erickson prior art cited by the Examiner on the one hand and the '217 patent application's claimed invention structure on the other hand, rendered claims in the '217 patent application was patentable. In doing so,

15

Hearthware state that "Erickson et al. does not disclose or suggest a cooling manifold including a lower surface facing an upper surface outside of a cooking enclosure…" (Exhibit 4).

72.     On information and belief, the '217 patent includes, in part, the cooling manifold including a lower surface facing an upper surface outside of a cooking enclosure is to "direct the cooling air flow toward the surface 56 of the housing 18 to cool the housing 18, as indicated by arrows A." (Emphasis added) (Exhibit 2, Col. 6, lines 52-54).

73.     The '874 patent claimed that the cooling fan is directly exposed to the upper wall/ceiling. In fact, the '874 described that "the Silocco fan 21 is rotated to forcibly exhaust hot air in the radiating chamber 17, which results from the radiation of heat produced from the sheath heater 23, through an exhaust hole 26 to the outside of the outer case 9, thus preventing excessive temperature rise of the ceiling of the outer case." (Exhibit 3, Col. 2, lines 32-38) (Emphasis added). Furthermore, the '874 patent stated that "the excessive heating of the ceiling of the outer case alone is prevented by the cooling fan …" (Emphasis added) (Exhibit 3, Col. 4, lines 2-3).

74.     On information and belief, the '217 patent would not have issued if the Patent Examiner had considered the '874 patent by itself or in combination with other references cited during the prosecution of the '217 patent.

75.     On information and belief, a reasonable patent examiner would find the '874 patent to be material to the patentability of the '217 patent.

76.     On information and belief, individuals involved in the prosecution of the '217 patent, intentionally withheld the '874 patent during the prosecution of the '217 patent.

77.     On information and belief, their failure to disclose the '874 patent during the prosecution of the '217 patent was to intentionally mislead and/or deceive the PTO.

78.     On information and belief, the inventors, Hearthware and the prosecuting attorneys have financially benefited either directly or indirectly as a result of the issuance of the '217 patent.

79.     On or about April 9, 1999, the claimed inventors signed a Combined Declaration/Power of Attorney, which was filed in Application Number 09/290,150.  In that document, each swore: "I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment specifically referred to above, and that I believe the named inventor(s) to be the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought, and hereby acknowledge the duty to disclose information which is material to the examination of the application in accordance with § 1.56 [] of Title 37 of the code of Federal Regulations."

80.     On information and belief, the claimed inventors, Hearthware and the prosecuting attorneys knowingly breached the duty under 37 C.F.R. § 1.56 to provide the PTO with the '874 patent during the prosecution of the '217 patent.

81.     The '217 patent is, therefore, unenforceable due to Hearthware's, at least one common inventor's, and/or the prosecuting attorneys' inequitable conduct and fraud upon the PTO during the prosecution and due to the issuance of the '217 patent in violation of 35 U.S.C. §§ 102 and 103.

82.     Despite Hearthware's full knowledge of the unenforceability of the '217 patent due to inequitable conduct, Hearthware has sought to enforce the '217 patent in this United States federal court against Morningware.  Such conduct renders this case exceptional under 35 U.S.C. § 285, and thereby entitles Hearthware to recover its attorneys' fees necessitated by responding to this frivolous lawsuit.

17

<u>Undisclosed Korean Patent No. 1996-0002662</u>

83.     Upon information and belief, Mr. Moon founded Hearthware, which is also known as IBC-Hearthware, Inc. and IBC-International Corp.

84.     Upon information and belief, now defunct IBC Industrial Merchandising Co., Inc ("IBC"), located at 480 PunNap 1 Dong SongPa-Ku, 138-041 Seoul, Korea, was a subsidiary of Hearthware.

85.     Upon information and belief, on or around 1996, Mr. Moon, on behalf of Hearthware, with IBC, entered into a business relationship with a Korean manufacturing company, Imex Corporation ("Imex").

86.     On April 8, 1993, Korean Patent No. 1996-0002662 ("the KR '662 patent"), entitled "Cooking Vessels of Oven," was issued to Eugene Song (Exhibit 5).

87.     Upon information and belief, Eugene Song is the CEO of Imex.  By virtue of Mr. Song's position, Imex owns the '662 patent.

88.     Upon information and belief, Figs. 1, 2, 3, 4, 6, 8, and 9 of the KR '662 patent contain similar or substantially similar structures that are depicted in the '217 patent that Mr. Moon, Mr. Liu, and Mr. Kelley declared to be the original inventors.  This information regarding the KR '662 patent was material to patentability of the '217 patent in that it may have affected the issuance of the '217 patent.

89.     Upon information and belief, Hearthware, and in particular Mr. Moon, was aware of the KR '662 patent's existence because Mr. Moon had specifically offered to buy the '662 patent from Imex well before the '217 patent application was filed.

90.     On information and belief, during prosecution of the '217 patent and in breach of their duty, individuals involved in the prosecution of the '217 patent, and in particular Mr. Moon, failed to advise the PTO of the KR '662 patent.

91.     The KR '662 patent, individually or in combination with other references cited during the prosecution of the '217 patent, would invalidate at least one originally filed and/or issued claim of the '217 patent under 35 U.S.C. §§ 102 or 103.

92.     On information and belief, a reasonable patent examiner would find the KR '662 patent to be material to the patentability of the '217 patent.

93.     On information and belief, individuals involved in the prosecution of the '217 patent, intentionally withheld the KR '662 patent during the prosecution of the '217 patent.

94.     On information and belief, the individuals involved in the '217 patent's failure to disclose the KR '662 patent during the prosecution of the '217 patent was to intentionally mislead and/or deceive the PTO.

95.     On information and belief, Hearthware and inventors, and in particular Mr. Moon, have financially benefited either directly or indirectly as a result of the issuance of the '217 patent.

96.     On information and belief, inventors, Hearthware, and the prosecuting attorneys knowingly breached the duty under 37 C.F.R. §1.56 to provide the PTO with the KR '662 patent during the prosecution of the '217 patent.

97.     The '217 patent is, therefore, unenforceable due to Hearthware's and/or at least one common inventor's inequitable conduct and fraud upon the PTO during the prosecution and due to the issuance of the '217 patent in violation of 35 U.S.C. §§ 102 and 103.

98.     Despite Hearthware's, and in particular Mr. Moon's, full knowledge of the unenforceability of the '217 patent due to inequitable conduct, Hearthware has sought to enforce the '217 patent in this United States federal court against Morningware.  Such conduct renders this case exceptional under 35 U.S.C. § 285, and thereby entitles Hearthware to recover its attorneys' fees necessitated by responding to this frivolous lawsuit.

99.     The '217 patent is, therefore, unenforceable due to inequitable conduct committed by individual(s) at Hearthware involved in the preparation, filing, and/or prosecution of the '217 patent application before the PTO, and Morningware is entitled to a declaration to that effect.

## FIFTH AFFIRMATIVE DEFENSE
### (Patent Misuse)

100.     Hearthware's enforcement of the asserted patent constitutes patent misuse.

101.     In paragraph 2 of Hearthware's Complaint (Case No. 09-04903), now consolidated with this Case, Defendant/Counterclaimant Hearthware asserts that it "owns all right, title and interest in and has standing to sue for infringement of United States Patent No. 6,201,217…"

102.     Upon information and belief, Jung S. Moon, Rong Liu, and Alan R. Kelley (collectively "the claimed inventors") are not the only correct inventors of the '217 patent.

103.     Upon information and belief, Mr. Moon, on behalf of Hearthware, with IBC, contracted with another Korean manufacturing company, Sung Kwang Electronics Co., Ltd. ("SKE") between late 1997 and early 1998 to manufacture the electric counter-top ovens, which embodied the originally filed and/or issued claims of the '217 patent.

104.     Upon information and belief, SKE, Mr. Moon of Hearthware, and IBC worked together collaboratively on the redesign of the electric counter-top oven product line, specifically, Convection Oven, Model No. SCO-1200—well before the '217 patent was filed.

20

105.    During the research and development process of this redesign, there was information shared between SKE, Mr. Moon, Hearthware, and IBC.

106.    Additionally, on information and belief, through SKE, Mr. Moon gained SKE's proprietary information about the convection oven, including without limitations such things as utilizing: (i) a ceramic coated incoloy material for an infrared heating element; (ii) a removable protective grid; (iii) a dome-shaped power head; (iv) a particular design feature of the dome-shaped power head; and (v) an improved body and a base material.

107.    Upon information and belief, much of that information provided by SKE to Mr. Moon was disclosed in the '217 patent application.

108.    Upon information and belief, only SKE had access to any equipment necessary to reduce to practice aforementioned improvements.

109.    Upon information and belief, before collaborating with SKE, neither Mr. Moon nor Hearthware had the sufficient requisite knowledge and expertise to conceive of all the aspects of the properly construed originally filed and/or issued claims in the '217 patent.

110.    Upon information and belief, Hearthware and SKE signed a non-disclosure and/or a confidentiality agreement.

111.    Upon information and belief, Hearthware has in its possession or control corroborating documents to support SKE's contribution disclosed in the '217 patent.

112.    Upon information and belief, SKE has in its possession or control corroborating documents to evidence its contribution that were made part of the claims in the '217 patent.

113.    For the reasons set forth above, Hearthware has misused the '217 patent by asserting claims of infringement despite knowing or should have known that the said patent upon which the claims are based are invalid and unenforceable.

## SIXTH AFFIRMATIVE DEFENSE
**(Laches)**

114.    Defendant/Counterclaimant Hearthware is time barred under the doctrine of laches to bring its action against Morningware.  Hearthware unreasonably delayed in filing its action, and unreasonably delayed in prosecuting the asserted claims, after Hearthware knew, or should have known of the alleged infringing acts.  In the interim, Morningware has invested time and money into building its business and goodwill.  To allow Hearthware to bring an action now after its unreasonable delay would result in material prejudice to Morningware.

## SEVENTH AFFIRMATIVE DEFENSE
**(Innocent Intent)**

115.    Morningware has engaged in all relevant activities in good faith, thereby precluding Hearthware, even if it prevails, from recovering its reasonable attorneys' fees and/or costs under 35 U.S.C. § 285.

## EIGHTH AFFIRMATIVE DEFENSE
**(Prosecution History Estoppel)**

116.    By reason of the proceedings in the PTO during the prosecution of the application for the '217 patent and the statements, admissions and presentation made by the named inventors and/or their attorneys.  Hearthware is estopped from asserting any interpretation of the '217 patent claims that would cover Morningware's electric counter-top ovens.

## NINETH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

117.    Hearthware is not entitled to any relief in this action because it has come into this Court with unclean hands.  In particular, Hearthware failed to disclose material information concerning at least the relevant prior art to the Patent Office.  Additionally, even though

Hearthware had information that rendered the '217 patent invalid and unenforceable, Hearthware nevertheless filed the instant suit attempting to enforce the '217 patent.

## TENTH AFFIRMATIVE DEFENSE
### (Notice/Marking)

118.    Hearthware is precluded by 35 U.S.C. § 287 from seeking damages for any alleged infringement prior to providing actual notice of the '217 patent to Morningware.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Lack of Actionable Confusion)

119.    Hearthware's Trade Dress infringement claims are barred by the defense of lack of actionable confusion, *i.e.*, Hearthware cannot demonstrate any likelihood that the public will be confused or misled as to the nature or characteristics of the Morningware ovens. The packaging and advertising for Morningware's ovens are prominently marked with Morningware's own trademarks. Customers and prospective customers of ovens are sophisticated purchasers. If, *arguendo*, instances of confusion occurred, they are *de minimus*. Hearthware's assertion of this frivolous claim is barred by applicable trademark law.

## TWELVETH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

120.    On information and belief, Hearthware has failed to act reasonably to mitigate the damages, if any, alleged in the Counterclaim by waiting for the most anti-competitive time to file this lawsuit, rather than raising the issue when Hearthware first became aware of Morningware's electric counter-top ovens.

## THIRTEEN AFFIRMATIVE DEFENSE
### (Independent, Intervening, and/or Superseding Acts)

121.    Hearthware's claims are barred because any damage Hearthware has suffered is the result of its own conduct in creating and marketing an expensive electric counter-top oven, or

the conduct of consumers who, with full knowledge of both products, have chosen Morningware's electric counter-top ovens over Hearthware's. Morningware therefore pleads independent, intervening, and/or superseding acts and omissions of Hearthware and others as a complete bar to this action.

## FOURTEENTH AFFIRMATIVE DEFENSE

122. This action is barred because Hearthware lacks standing to sue.

## FIFTEENTH AFFIRMATIVE DEFENSE

123. The NuWave Oven is *de jure* functional.

## SIXTEENTH AFFIRMATIVE DEFENSE

124. Hearthware's claims are barred because Hearthware cannot demonstrate any likelihood that the public has been or will be confused or misled into believing that Morningware and/or the Morningware Infrared Halogen Oven product are affiliated, connected or associated with, and/or otherwise sponsored, approved, and/or authorized by, Hearthware.

## SEVENTEENTH AFFIRMATIVE DEFENSE

125. All possible affirmative defenses of Morningware may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry. Accordingly, Morningware reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and reserves the right to amend this answer and reply to allege additional affirmative defenses as subsequent investigation warrants.

## COUNTERCLAIMS

Morningware for its counterclaims against Defendant/Counterclaimant Hearthware alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

126.    Plaintiff/Counterdefendant Morningware, Inc. is a corporation organized under the laws of the State of Illinois, with its principal place of business at 1699 Wall Street, Mt. Prospect, Illinois 60056.

127.    Upon information and belief, Defendant/Counterclaimant Hearthware Home Products, Inc. ("Hearthware") is, as alleged in the complaint filed on August 8, 2009, a corporation organized under the laws of the State of Illinois, with its principal place of business at 880 Lakeside Drive, Gurnee, Illinois 60031.

128.    Hearthware claims to be the exclusive owner of the '217 patent and claims to have the right to sue others for infringement of the '217 patent.

129.    By virtue of Hearthware's countersuit against Morningware for the alleged infringement of the '217 patent, there exists an actual case or controversy between the parties, and this Court should now settle the controversy between the parties by declaring their respective rights with regard to the '217 patent and their conduct related thereto.

130.    This is an action arising under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 271 *et seq.*, based on the actual justiciable controversy between Morningware and Hearthware.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201-2202.

131.    Venue properly resides in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

### COUNT SIX
### (Declaration of Non-infringement of the '217 patent)

132.    Morningware realleges each of the allegations set forth in paragraphs 126-131 of its Answer and Reply set forth above and realleges each of the allegations set forth in its Second Affirmative Defense above.

133.    Morningware has not and does not (a) literally infringe, (b) contributorily infringe, or (c) induce infringement of any valid and enforceable claim of the '217 patent.

134.    Hearthware's allegations that Morningware has infringed the '217 patent warrants judicial relief from this Court in the form of a declaration that Morningware has not infringed and is not infringing the '217 patent.

## COUNT SEVEN
### (Declaration of Invalidity of the '217 patent)

135.    Morningware realleges each of the allegations set forth in paragraphs 126-131 of its Answer and Reply set forth above and realleges each of the allegations set forth in its Third Affirmative Defense above.

136.    The '217 patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code, including inter alia, 35 U.S.C. §§ 102, 103, and/or 112.

137.    In the countersuit filed by Hearthware in the Case No. 09-04948 (now reassigned to this Court, Case No. 09-04348), Hearthware alleges that the '217 patent was duly and legally issued.  Morningware denies that the '217 patent was duly and legally issued, including because it is invalid for failing to satisfy the conditions for patentability under Title 35 of the United States Code.   An actual and justiciable controversy has therefore arisen and Morningware warrants judicial relief from this Court in the form of a declaration that the '217 patent is invalid.

## COUNT EIGHT
### (Declaration of Unenforceability of the '217 patent)

138.    Morningware realleges each of the allegations set forth in paragraphs 126-131 of its Answer and Reply set forth above and realleges each of the allegations set forth in its Fourth Affirmative Defense above.

26

139.     Morningware contends with particularity that inequitable conduct was committed during prosecution of the '217 patent.  As a result of this conduct, the '217 patent is unenforceable.

**COUNT NINE**
**(Patent Misuse)**

140.     Morningware realleges each of the allegations set forth in paragraphs 126-131 of its Answer and Reply set forth above and realleges each of the allegations set forth in its Fifth Affirmative Defense above.

**COUNT NINE**
**(Tortious Interference with Prospective Economic Advantage)**

141.     Morningware realleges each of the allegations set forth in paragraphs 126-131 of its Answer and Reply above.

142.     By engaging in the actions set forth above, including but not limited to filing suit without properly investigating Morningware's products and asserting a patent that Hearthware knows is invalid and/or unenforceable, Hearthware has intentionally interfered with Morningware's present and future business interests with respect to making and selling Morningware's electric counter-top ovens.

143.     Specifically, without limitation, (1) Hearthware has intentionally engaged in wrongful conduct desired to interfere or disrupt with Morningware's existing and prospective business relationships; (2) Hearthware's acts have caused Morningware's economic relationships to be actually interfered with or disrupted; and (3) Hearthware's wrongful conduct, which was designed to interfere with or disrupt the relationships, has in fact caused injury to Morningware. Specifically, without limitation, Hearthware has made statements to customers and prospective customers to the effect that (1) Hearthware's '217 patent is valid and enforceable, (2)

27

Morningware is unlawfully marketing the counter-top ovens, (3) Hearthware's counter-top ovens are "patented," and (4) the counter-top ovens Morningware provides to its customers are "imitations" or of a lesser quality or not as useful as Hearthware's counter-top ovens.

## COUNT TEN
### (Exceptional Case)

144.    Morningware repeats and realleges each and every allegations of paragraph 51 through 143 as though fully set forth herein.

145.    This is an exceptional case, 37 U.S.C. § 285.

## RELIEF REQUESTED

WHEREFORE, Morningware prays for Judgment against Defendant/Counterclaimant Hearthware as follows:

G.    Morningware realleges each of the relief requested in paragraph A – F of its original Complaint filed on July 20, 2009 (Doc. No. 1).

H.    Judgment that U.S. Patent No. 6,201,217 is invalid and/or unenforceable.

I.    Judgment that Morningware's sale and offering to sell its counter-top ovens is lawful.

J.    Judgment that Hearthware's courses of conduct set forth hereinabove are unlawful.

K.    Judgment that Hearthware's enforcement of the asserted patent constitutes patent misuse.

L.    Judgment that a permanent injunction issue enjoining Hearthware, its directors, officers, agents, servants, employees, attorneys, and all other persons acting in privity or in concert with them from:

a.    Representing that Hearthware's goods or services have qualities or

characteristics which they do not have.  This specifically includes, without limitation, that Hearthware's counter-top ovens are within the scope of a valid patent when they are not.

b.      Representing that Morningware's goods or services have qualities or characteristics which they do not have.  This specifically includes, without limitation representing that Morningware's counter-top ovens infringe a valid Hearthware patent, when they do not.

M.      Judgment that Hearthware pays Morningware such damages, together with pre-judgment interest and post-judgment interest, as Morningware has sustained as a consequence of Hearthware's wrongful acts.

N.      Judgment that Hearthware accounts to and pays to Morningware all wrongful profits wrongfully obtained by Hearthware as a consequence of Hearthware's wrongful acts.

O.      Judgment that Hearthware pays Morningware all applicable statutory, common law, treble, enhanced, punitive, and exemplary damages to Morningware together with payment to Morningware of an amount at least three times the amount of Morningware's actual damages or Hearthware's wrongfully-obtained profits.

P.      Judgment that this case is exceptional with the meaning of 35 U.S.C. § 285 and award Morningware its attorneys' fees, costs, and expenses in this action, including, without limitation, attorneys' fees, and costs; and all applicable Illinois and Federal statutes.

Q.      Provide any further relief as this Court may deem equitable and proper.

DATED:  September 21, 2009          Respectfully Submitted,

s/Nicholas S. Lee/_____
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
EDWARD BISHOP & ASSOCIATES, LTD.

1320 Toward Road
Schaumburg, IL 60173
Tel:  (847) 925-9333
Fax:  (847) 925-9227

*Attorneys for Plaintiff/Counterdefendant*
*Morningware, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 21[th] day of September, 2009. Any other counsel of record will be served by electronic mail and/or first class mail.

<u>/s/ Nicholas S. Lee               </u>
Nicholas S. Lee