**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MORNINGWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 4348 |
| | ) | |
| HEARTHWARE HOME PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 20, 2009, Plaintiff Morningware, Inc. ("Morningware") filed a Complaint against Defendant Hearthware Home Products, Inc. ("Hearthware") alleging: (1) unfair competition in violation of 15 U.S.C. § 1125(a); (2) product disparagement in violation of 15 U.S.C. § 1125(a)(1)(B); (3) deceptive trade practices in violation of 815 ILCS 510/2; (4) common law unfair competition; and (5) commercial disparagement. On August 24, 2009, the Court consolidated the present lawsuit with Hearthware's patent infringement lawsuit against Morningware. In its August 10, 2009 Complaint, Hearthware alleged that Morningware infringed United States Patent No. 6,201,217 ("the '217 patent") entitled "Counter-Top Electric Cooker." Hearthware also brought a trade dress infringement claim under 15 U.S.C. § 1125(a), a deceptive trade practices claim in violation of 815 ILCS 510/2, and a claim based on common law unfair competition. Before the Court is Morningware's motion pursuant to Federal Rules of 16(f) and 37 to strike Hearthware's Northern District of Illinois Local Patent Rule 3.1 Final Infringement Contentions and to dismiss Hearthware's infringement claims from this lawsuit.

For the following reasons, the Court grants in part and denies in part Morningware's motion. The Court grants Hearthware leave to amend its "Final Infringement Contentions" regarding claim limitations 1(b)(2) and 1(c) by no later than October 1, 2010. Further, the Court strikes Hearthware's final contentions concerning the doctrine of equivalents arguments that Hearthware brought in the alternative to its literal infringement claims. The Court denies Morningware's motion as to the remainder of the Final Infringement Contentions and will not dismiss Hearthware's infringement claims from this lawsuit.

## LEGAL STANDARD

Although Morningware labeled the present motion as a motion to strike pursuant to Federal Rules of Civil Procedure 16(f) and 37 in which Morningware seeks the sanction of dismissing Hearthware's infringement claims, the substance of Morningware's motion is that Hearthware failed to properly provide detailed Final Infringement Contentions as required by Local Patent Rules ("LPR") 2.2 and 3.1. Courts are hesitant to dismiss claims as a sanction under Rules 16(f) and 37 and only do so in extreme cases. *See Negrete v. National R.R. Passenger Corp.,* 547 F.3d 721, 723-74 (7th Cir. 2008); *see also Banco Del Atlantico, S.A. v. Woods Indus., Inc.,* 519 F.3d 350, 354 (7th Cir. 2008) ("a sanction of dismissal is a last resort which can only be employed in rare cases"); *Spain v. Board of Educ. of Meridian Cmty. Unit Sch. Dist.,* 214 F.3d 925, 930 (7th Cir. 2000) ("Dismissal should be used "'only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable.'") (citation omitted). This is not one of those extreme cases, and thus, the Court construes the present motion as a motion to strike certain Final Infringement Contentions, as well as a motion to compel more detailed Final Infringement

Contentions pursuant to LPR 2.2 and 3.1.

## NORTHERN DISTRICT OF ILLINOIS LOCAL PATENT RULES

The initial disclosures under LPR 2.2 through 2.5 obligate patent litigants to disclose the basis for their allegations – the purpose of which is to identify the issues in the case and allow the parties to narrow their discovery requests. *See* Judge Matthew F. Kennelly, Edward D. Manzo, Northern District of Illinois Adopts Local Patent Rules, 9 J. Marshall Rev. Intell. Prop. L. 202, 212 (2010); *see also* N.D. Ill. LPR 1.6 cmt. First, the party claiming patent infringement serves its "Initial Infringement Contentions" that require the party claiming infringement to "identify the patent claims it contends are infringed and each accused instrumentality (product, process, etc.) and to provide a statement of whether each element is believed to be found literally or via the doctrine of equivalents." *Kennelly,* supra, at 212. "LPR 2.3 requires the accused infringer to serve initial contentions explaining the basis for any claims of non-infringement, unenforceability, and invalidity." *Id.* at 213. Thereafter, LPR Rule 3.1 requires service of "Final Infringement Contentions" and LPR 3.2 requires the accused infringer's response to the final contentions. *See id.* at 216. The "Final Infringement Contentions" must provide the information required in the initial disclosures under LPR 2.2. *See* N.D. Ill. LPR 3.1.

## ANALYSIS

On July 6, 2010, Hearthware served its Final Infringement Contentions asserting that Morningware's counter-top electric oven ("Halogen Oven" or "Morningware Oven") infringes claims 1 and 3 of the '217 patent. In the present motion, Morningware argues that Hearthware's Final Infringement Contentions "are replete with evasive, incomplete, cut-and-past [sic] allegations." The Court addresses Morningware's arguments in turn.

## I. "a cooking enclosure including an upper surface with an opening therein"

First, Morningware maintains that Hearthware's Final Infringement Contention as to claim limitation 1(a) – "a cooking enclosure including an upper surface with an opening therein" – is conclusory because it merely states that: "The Morningware Oven has a dome and a glass tray which together define a cooking including an upper surface enclosure with an opening in the upper surface of the cooking enclosure. See, e.g., MHO000002." Morningware, however, fails to provide Hearthware's full contention for this claim, which also states:

> According to Morningware's Initial Non-Infringement Contentions Under LPR 2.3(a), Morningware appears to contend that the Morningware Oven does not satisfy this limitation because it rests on a glass-ceramic tray, rather than a base with a separate metallic pan. Nothing in the plain language of these claim terms, or in the specification or file history of the '217 patent requires the limitations Morningware reads into the term "cooking enclosure." Morningware's noninfringement position appears to rest upon an improper importation of exemplary descriptions from the specification into the claims. Moreover, the limitations Morningware attempts to read into this limitation are clearly set forth in other claims of the '217 patent, see, e.g., claims 5, 12 and 15. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the Morningware Oven's cooking enclosure is insubstantially different from the claimed cooking enclosure, and performs substantially the same function (providing an enclosed space for cooking food) in substantially the same way (providing a dome shaped enclosure with an opening in its upper surface) to achieve the same result (cooking food within an enclosed space).

(R. 132-2, Ex. 2, Ex. A, at 5.)

In the present motion, Morningware specifically argues that Hearthware does not show or properly explain where the upper surface is located in the accused Morningware Oven asking the question: "Is the upper surface on the dome, the glass tray or somewhere else?" Hearthware points out that the cited documentation – MHO000002 – is Morningware's own instruction manual for its "Halogen Oven" that contains a diagram showing the glass tray, the polycarbonate

dome, and the top of the dome. (Ex. 3, at 2, MHO000002.) Accordingly, Morningware's argument is without merit because the Morningware Oven's upper surface of the cooking enclosure is evident from the cited documentation in Hearthware's final contention.

## II. "a heating unit extending into the cooking enclosure through said opening"

Next, Morningware argues that Hearthware's claim limitation 1(b)(1) – "a heating unit extending into the cooking enclosure through said opening" – is inadequate because the only document Hearthware cites in its Final Infringement Contentions, MHO000003, does not provide details of the 'heating unit." Again, Morningware fails to cite Hearthware's full contention for this claim limitation, which states:

> The Power Head includes a heating unit on the bottom of the Powerhead extending into the cooking enclosure defined by the dome and glass tray. See, e.g., MHO000003.
>
> According to Morningware's Initial Non-Infringement Contentions Under LPR 2.3(a), Morningware appears to contend that the Morningware Oven does not satisfy this limitation because its heating unit does not have a radiation plate or a cylindrical wall portion of the lower housing. Nothing in the plain language of these claim terms, nor in the specification or file history of the '217 patent requires the limitations Morningware reads into the term "heating unit." Morningware's non-infringement position appears to rest upon an improper importation of exemplary descriptions from the specification into the claims. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the Morningware Oven's heating unit is insubstantially different from the claimed heating unit, and performs substantially the same function (cooking food) in substantially the same way (providing heat) to achieve the same result (cooking food within a cooking enclosure).

(Ex. 2, at Ex. A, at 6, MHO000003.)

Here, the Halogen Oven instruction manual page cited at MHO000003 directs the user under the "How to assemble" section to "Place Halogen Powerhead on top and into dome." This statement, along with the diagrams on this page, explains that the heating unit is on the

5

bottom of the powerhead and extends into the cooking enclosure. Therefore, Morningware's argument that Hearthware provides insufficient details as to this final contention fails.

**III.    "a fan chamber positioned above the cooking enclosure and the heating unit"**

In support of claim limitation 1(b)(2), which concerns the fan chamber in Morningware's Halogen Oven, Morningware argues that Hearthware merely makes a conclusory statement that: "The powerhead includes a fan chamber. The fan chamber is located in the Powerhead, above both the heating unit and the cooking enclosure." Morningware fails to take into consideration Hearthware's full contention for this claim limitation, which states:

> The Powerhead includes a fan chamber. The fan chamber is located in the Powerhead, above both the heating unit and the cooking enclosure.
> According to Morningware's Initial Non-Infringement Contentions Under LPR 2.3(a), Morningware appears to contend that the Morningware Oven does not satisfy this limitation because its fan chamber does not identically match the details of the fan chamber described in an exemplary embodiment of the '217 patent. Nothing in the plain language of these claim terms, nor in the specification or file history of the '217 patent requires the limitations Morningware reads into the term "fan chamber." Morningware's non-infringement position appears to rest upon an improper importation of exemplary descriptions from the specification into the claims. Similarly, nothing in the claim language, specification or prosecution history requires that no part of the fan chamber may extend down and around the heating unit. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the Morningware Oven's fan chamber is insubstantially different from the claimed fan chamber, and performs substantially the same function (capturing and creating air flow) in substantially the same way (providing a chamber) to achieve the same result (providing a mechanism for creating air flow).

(Ex. 2, at Ex. A, at 7.)

In Morningware's Initial Non-Infringement Contentions under LPR 2.3(a), Morningware gives a detailed description differentiating its fan chamber from what Morningware understands to be the proper interpretation of the fan chamber in limitation (b)(2). Morningware also

provided photographs of the Halogen Oven partly disassembled and a figure of the fan chamber portion of the power head showing where the fan is located. (Ex. 1, Ex. A, at 6-12.) That being said, although Hearthware refers to Morningware's Initial Non-Infringement Contentions, it fails to cite to a particular diagram or photograph or give a detailed explanation of where the fan chamber is located in the powerhead. Therefore, the Court grants Morningware's motion to compel a more detailed Final Infringement Contention as to claim limitation 1(b)(2) – "a fan chamber positioned above the cooking enclosure and the heating unit."

**IV.**  **"a fan mounted in the fan chamber to create a cooling air flow through the fan chamber"**

Next, Morningware argues that Hearthware's Final Infringement Contention as to claim limitation 1(b)(3) is a conclusory statement, although Morningware omits a large part of Hearthware's contention, which states in its entirety:

> A fan is mounted in the fan chamber of the Powerhead and creates a cooling air flow through chamber the fan chamber.
>
> According to Morningware's Initial Non-Infringement Contentions Under LPR 2.3(a), Morningware appears to contend that the Morningware Oven does not satisfy this limitation because its "fan chamber" does not contain a fan mounted in it. Morningware appears to allege that its Powerhead contains at least two portions, a so called "upper chamber" and a lower one. Morningware alleges that the "upper chamber" does not have a fan in it and therefore it does not satisfy this limitation. However, in response to claim limitation (b)(4) below, Morningware states that the "upper chamber of the Morningware Oven is not a fan chamber." If the lower portion of the Powerhead is the fan chamber, then there is clearly a fan mounted within it. In either case, the two portions of the Powerhead are in fluid communication with each other (*e.g.*, air entering into the top of the Powerhead passes through the lower portion before exiting through vents on the underside of the Powerhead), and literally function as one chamber. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the Morningware Oven's fan mounted in the fan chamber is insubstantially different from the claimed fan mounted in the fan chamber, and performs substantially the same function (capturing and creating air flow) in substantially the same way (via

7

a fan) to achieve the same result (providing a mechanism for creating air flow).

(Ex. 2, Ex. A, at 7.)

Morningware specifically argues that Hearthware's contention regarding where the fan chamber is located in the powerhead is not supported by diagrams, figures, or any explanation. Hearthware's contention is not conclusory, however, because not only did it use Morningware's own description of the powerhead in the Halogen Oven to describe its infringement contentions, it explained how the Halogen Oven's powerhead portions function as one chamber. As such, Morningware's argument that this final contention is not sufficiently supported is without merit.

## V. "a plurality of air inlets to the fan chamber to allow said cooling air flow into the fan chamber"

Further, Morningware maintains that Hearthware's Final Infringement Contention as to claim limitation 1(b)(4) – "a plurality of air inlets to the fan chamber to allow said cooling air flow into the fan chamber" is conclusory and does not make sense. Hearthware's final contention for claim limitation 1(b)(3) reads in its entirety:

> The Powerhead includes a plurality of air inlets to the fan chamber that allow cooling air flow the fan chamber into the fan chamber.
>
> According to Morningware's Initial Non-Infringement Contentions Under LPR 2.3(a), Morningware appears to contend that the Morningware Oven does not satisfy this limitation because the so-called upper chamber of the Powerhead is not a fan chamber (although it does have a plurality of air inlets). As noted above in (b)(3), the two portions of the Powerhead are in fluid communication with each other (e.g., air entering into the top of the Powerhead passes through the lower portion before exiting through vents on the underside of the Powerhead), and literally function as one chamber. Moreover, the metal plate that Morningware alleges creates a second chamber in the Powerhead itself has a plurality of air inlets, so even if the Court determines the lower portion of the Powerhead alone is the fan chamber, this limitation is still literally satisfied. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the Morningware Oven's plurality of air inlets to the fan chamber is insubstantially

8

different from the claimed plurality of air inlets to the fan chamber, and performs
substantially the same function (capturing and creating air flow) in substantially
the same way (via air inlets through which air is captured into a space containing
a fan) to achieve the same result (providing a mechanism for creating air flow).

(Ex. 2, Ex. A, at 9.)

Here, Hearthware uses Morningware's own description of the powerhead in its final contention and then describes that the two portions of the powerhead literally function as one chamber and that the metal plate has a plurality of air inlets. Hearthware's contention explaining how the Halogen Oven infringes claim limitation 1(b)(4) is sufficiently supported. The Court thus denies Morningware's motion as to this final contention.

**VI.** **"a cooling manifold surround said opening and including a lower surface facing aid upper surface outside of said cooking enclosure, the cooling manifold in fluid communication with the fan chamber and including a plurality of air outlets arranged in said lower surface to direct the cooling air flow from the fan chamber toward the upper surface of the cooking enclosure to cool the upper surface"**

Next, Morningware argues that in its final contentions, Hearthware failed to identify the location of the "cooling manifold" element as described in claim limitation 1(c). Hearthware's final contention reads in entirety:

> The Power Head includes a cooling manifold surrounding the opening in the cooking enclosure with a plurality of air vents at least partially in a lower surface of the cooling manifold directing air flow from the fan chamber to the upper surface of the cooking enclosure.
>
> According to Morningware's Initial Non-Infringement Contentions Under LPR 2.3(a), Morningware appears to contend that the Morningware Oven does not satisfy this limitation because it has a series of apertures arranged in the side surface of the Powerhead such that the air flow is directed outwardly and away from the oven. Upon information and belief, the arrangement of the air outlets in the Morningware Oven does not direct the air solely outwardly from the oven, but rather, also directs air toward the upper surface of the cooking enclosure. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the

9

> Morningware Oven's cooling manifold is insubstantially different from the
> claimed cooling manifold, and performs substantially the same function (cooling
> the cooking enclosure) in substantially the same way (using a cooling air flow) to
> achieve the same result (preventing the oven from overheating).

(Ex. 2, Ex. A, at 10.)

Hearthware's contention uses Morningware's own description of the Halogen Oven in its attempt at explaining that "the arrangement of the air outlets in the Morningware Oven does not direct the air solely outwardly from the oven, but rather, also directs air toward the upper surface of the cooking enclosure." Hearthware's contention, however, fails to provide sufficient information on how the Halogen Oven directs air toward the upper surface of the cooking enclosure. Therefore, the Court grants Morningware's motion to compel a more detailed Final Infringement Contention as to claim limitation 1(c).

**VII. "wherein said hearing unit is spaced from said opening to define a hot gas vent surrounding said heating unit and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets"**

Morningware also maintains that Hearthware's final contention concerning claim limitation 3(c) is insufficient under the LPR. As above, Morningware fails to consider the entire contention, which reads:

> The Morningware Halogen Oven has a hot gas vent surrounding the heating unit
> of the Power Head. The hot gas vent is defined by the space between the heating
> unit and the cooking enclosure. The hot gas vent necessarily exists as the locking
> mechanism between the Power Head and dome consists of protrusions on both the
> Power Head and the dome, so areas without protrusions have a space between the
> Power Head and dome forming the hot gas vent.
>
> According to Morningware's Initial Non-Infringement Contentions Under LPR
> 2.3(a), Morningware appears to contend that the Morningware Oven does not
> satisfy this limitation because it has a series of apertures arranged in the side
> surface of the Powerhead such that the air flow is directed outwardly and away
> from the oven and therefore cannot mix with the hot gas venting from the cooking

10

enclosure. As noted above, upon information and belief, the arrangement of the air outlets in the Morningware Oven does not direct the air solely outwardly from the oven, but rather, also directs air toward the upper surface of the cooking enclosure. Moreover, even assuming the Morningware Oven air outlets direct air outwardly, there will undoubtedly be a mixture of the hot gas venting from the cooking enclosure as such gas will rise up and travel along the top of the cooling manifold where the air outlets are located. Further, should the Court determine the Morningware Oven does not literally infringe this claim limitation, the limitation is satisfied under the doctrine of equivalents as the Morningware Oven's hot gas vent is insubstantially different from the claimed cooling manifold, and performs substantially the same function (venting hot gas from the cooking enclosure) in substantially the same way (using a hot gas vent at the top of the cooking enclosure) to achieve the same result (preventing the oven from overheating).

(Ex. 2, Ex A., at 12.)

Specifically, Morningware argues that Hearthware's statement alleging literal infringement does not fulfill its requirements under LPR 3.1. The Court disagrees. Hearthware's contention provides a specific description regarding how the hot gas vented from the Halogen Oven's cooking enclosure mixes with the air vented from the series of apertures in the side service of the powerhead. Under LPR 3.1, this information is sufficiently specific despite Morningware's argument to the contrary. The Court thus denies Morningware's motion as to this literal infringement contention.

## VIII. Doctrine of Equivalents

On the other hand, the Court agrees with Morningware that Hearthware has failed to fulfill the relevant LPR for its alternative claims under the doctrine of equivalents. In its motion and memoranda, Morningware makes specific arguments how Hearthware's contentions fail to explain why the purported aspects of the Morningware Oven are equivalent and why any differences are insubstantial. *See* LPR 2.2(d); *see also Dawn Equip. Co. v. Kentucky Farms Inc.,* 140 F.3d 1009, 1016 (Fed. Cir. 1998) (the equivalent must "perform[ ] substantially the same

function, in substantially the same way, to get substantially the same result, as the limitation at issue in the claim."). Hearthware's bare-boned response that it has sufficiently set forth its alternative theory under the doctrine of equivalents – without any details or explanation – does not save the day. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir. 2010) ("undeveloped arguments and arguments that are unsupported by pertinent authority are waived.") (citation omitted). The Court therefore strikes Hearthware's contentions concerning its alternative claims under the doctrine of equivalents.

## IX.  Good Cause

On a final note, Hearthware maintains that before Morningware filed the present motion, Hearthware had indicated its willingness to amend its final contentions and provide additional details, but Morningware nevertheless filed the present motion. (*See* R. 133-2, Reply Brief, Ex. G, Farnum e-mail.) The Court considers this good cause for allowing Hearthware to amend its final contentions for claim limitations 1(b)(2) and 1(c) and concludes that Morningware will not be prejudiced in allowing Hearthware to do so. *See* LPR 3.4. Hearthware's failure to defend its alternative theory under the doctrine of equivalents in response to the present motion, however, vitiates any good cause established by Hearthware's offer to amend its contentions.

Meanwhile, from this point forward, the Court trusts that the parties will be able to work through their future LPR and discovery disputes, including making a good faith attempt to resolve their disputes before bringing them to the Court's attention. In sum, not only do the LPR apply, but the Northern District of Illinois Local Rules also apply, including Local Rule 37.2, which provides that courts "shall hereafter refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure,

unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's." *See Bond v. Utreras,* 585 F.3d 1061, 1074 (7th Cir. 2009). In sum, nothing in the LPR obviates the litigants' obligation to meet and confer before bringing discovery disputes to the Court.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Morningware's motion pursuant to Federal Rules of 16(f) and 37 to strike Hearthware's Northern District of Illinois Local Patent Rule 3.1 Final Infringement Contentions and to dismiss Hearthware's infringement claims.

**Date:** September 22, 2010

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**