**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MORNINGWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 4348 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| HEARTHWARE HOME | ) | |
| PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------------- | ) | |
| | ) | |
| IBC-HEARTHWARE, INC. | ) | |
| D/B/A HEARTHWARE HOME | ) | |
| PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Consolidated |
| v. | ) | |
| | ) | |
| MORNINGWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 20, 2009, Plaintiff Morningware, Inc. ("Morningware"), filed its Complaint

against Hearthware Home Products, Inc. ("Hearthware"), alleging that Hearthware had

commercially disparaged Morningware's goods, had committed the common-law tort of unfair

competition, and had violated the Deceptive Trade Practices Act of Illinois, as well as the unfair-

competition and product-disparagement provisions of the Lanham Act. (R. 1.) Separately,

Hearthware brought an action against Morningware alleging that the latter had infringed U.S.

Patent No. 6,201,217 ("the '217 patent"). (*IBC-Hearthware, Inc. v. Morningware, Inc.*, No. 09-

CV-4903 (N.D. Ill.) (R. 1).)  The Court consolidated both cases on August 26, 2009.  (*Id.* (R.

19).)

The Court construes the disputed terms as follows:

- "A cooking enclosure" means "an oven housing and a metallic oven pan supported by a base."

- "A heating unit" means "a unit that provides heat."

- "A fan chamber" means "one or more enclosed spaces, through which a fan moves air, that are in the power head and above both the cooking enclosure and the heating unit."

- "A fan" means "one or more fans."

- "A cooling manifold surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure" means "a flange and air outlets extending from the lower portion of the power head and surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure."

- "A cooling manifold surrounding said opening and facing said upper surface outside of said cooking enclosure" means "a flange and air outlets extending from the lower portion of the power head, and surrounding said opening and facing said upper surface outside of said cooking enclosure."

- "To direct the cooling air flow from the fan chamber toward the upper surface of the cooking enclosure to cool the upper surface" means "to guide the cooling air flow from the fan chamber in the direction of the upper surface of the cooking enclosure to cool the upper surface."

- "Wherein said heating unit is spaced from said opening to define a hot gas vent surrounding said heating unit and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets" requires no construction.

## BACKGROUND

Hearthware filed a lawsuit on August 10, 2009, alleging that Morningware had infringed

the '217 patent, had violated the Lanham and Illinois Uniform Deceptive Trade Practices Acts,

and had engaged in unfair competition under Illinois common law. (*IBC-Hearthware, Inc. v. Morningware, Inc.*, No. 09-CV-4903 (N.D. Ill.) (R. 1).) Hearthware alleges that Morningware's use and sale of the Halogen Convection Oven Model H0-1200 infringed the '217 patent, which is entitled "Counter-Top Electric Cooker." (*Id.*) In a separate lawsuit, Morningware alleged that Hearthware had commercially disparaged Morningware's products, had committed the common-law tort of unfair competition, and had violated the Deceptive Trade Practices Act of Illinois and both the unfair-competition and product-disparagement provisions of the Lanham Act. (R. 1.) On August 26, 2009, the Court consolidated both cases.

The parties dispute the proper construction of a number of material terms of the '217 patent. The Court now construes those claim terms.

## LEGAL STANDARD

Because the claims of a patent define the invention, claim construction—the process of giving meaning to the claim language—defines the scope of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-12 (Fed. Cir. 2005) (en banc) (citing 35 U.S.C. § 112). Claim construction is a matter of law for the court to determine. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). As the Federal Circuit clarified in *Phillips,* the court begins claim-construction analysis with the words of the claims themselves, giving those words their ordinary and customary meaning, which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13. The law assumes that that person read the claim terms "in the context of the entire patent, including the specification." *Id.*

Unless the meaning of the claim language is "readily apparent even to lay judges" ( *id.* at

1314), the court should "rely heavily" on the written description. *Id.* at 1317. In addition to reading the claims in the context of the specification, district courts may also consider the prosecution history. *Id.* at 1317. Courts must, however, be mindful that the prosecution history represents an "ongoing negotiation," such that it "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Extrinsic evidence, such as dictionaries, treatises, expert testimony, and inventor testimony, can be useful in claim construction. *Id.* at 1317-18. Nevertheless, such evidence is, "in general[,] ... less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

Despite acknowledging the soundness of the purpose underlying the *Texas Digital Sys., Inc. v. Telegenix*, 308 F.3d 1193 (Fed. Cir. 2002) line of cases, which was "to avoid the danger of reading limitations from the specification into the claim," the *en banc* court declined to follow the *Texas Digital* methodology because of its "greater emphasis to dictionary definitions of claim terms" and its granting "a less prominent role to the specification and the prosecution history." *Id.* at 1319-24.

## ANALYSIS

### I.     "A Cooking Enclosure" Means "An Oven Housing and a Metallic Oven Pan Supported by a Base"

The parties' first disputed term is "a cooking enclosure," which appears in Claims 1 and 3 of the '217 patent. (R. 145-1 at 1.) Hearthware submits that no construction by the Court is necessary. (*Id.*) In its claim-construction brief, Morningware proposes a highly detailed interpretation:

> An enclosed volume defined by (i) a metallic oven pan, having an interior surface and an exterior surface defined by a cylindrical side wall and a planar bottom, and (ii) an oven housing defined by a generally cylindrical side wall that blends into a

4

generally conically shaped side wall which in turn blends into a planar upper wall which finally blends into a generally cylindrical ring, all formed from a transparent polycarbonate material, each of the oven pan and the oven housing being supported by a base.

(R. 140 at 12.)  In the final joint claim-construction chart, however, Morningware merely proposes that the Court construe the term to mean "[a]n oven housing and a metallic oven pan supported by a base."  (R. 145-1 at 1.)  The Local Patent Rules require the parties to file the final joint claim-construction chart, which specifies each party's proposed construction, within seven days after filing the reply claim-construction brief.  N.D. Ill. L.P.R. 4.2(f).  The Court will therefore take Morningware's proposed construction to be "[a]n oven housing and a metallic oven pan supported by a base."

The summary of the invention specifies that "[t]he cooking enclosure is defined by an oven housing and an oven pan located beneath the oven housing."  (R. 140-1 at 11.)  This supports Morningware's proposed construction with respect to the cooking enclosure's constituting an oven housing and an oven pan.  Two further questions are whether the term requires that the oven pan be *metallic* and whether a base must support that pan.

Importantly, the "summary of the invention" states that "[t]he cooking enclosure includes . . . a metallic oven pan . . ."  (R. 140-1 at 11.)  In addition, the abstract provides that features of the claimed invention "include . . . a metallic oven pan."  (*Id.* at 2.)  Furthermore, the "background of the invention" provides that "it is . . . known for the lower portion of the cooking enclosure . . . to be defined by a metallic pan . . ."  (*Id.*)  Finally, the "detailed description of the preferred embodiment" describes an exemplary embodiment of the invention, which entails the use of a "metallic oven pan."  (*Id.* at 12.)

The Federal Circuit has emphasized that "the specification is always highly relevant to

the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Furthermore, the abstract of a patent may be a potentially useful source of intrinsic evidence for the purpose of claim construction. *See Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n.1 (Fed. Cir. 2000). In light of the preceding evidence, the Court concludes that "a cooking enclosure" requires a "metallic oven pan." The background of the invention itself makes clear that this construction of a cooking enclosure comports with the ordinary meaning that one skilled in the art would ascribe to the term. (R. 140-1 at 11 (background of the invention" provides that "it is . . . known for the lower portion of the cooking enclosure . . . to be defined by a metallic pan . . .") *Cf. Phillips*, 415 F.3d at 1316 (noting that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess").

The last issue is whether a base must support the oven pan. The summary of the invention provides that, "[a]ccording to one aspect of the invention . . . an electric oven includes . . . a cooking enclosure supported by the base . . ." (R. 140-1 at 11.) Furthermore, the detailed description of the preferred embodiment reveals that "[t]he base further includes one or more supports for the oven pan . . ." (*Id.* at 12.)[1] The intrinsic evidence, therefore, compels the

---

[1] It is noteworthy that independent Claim 5 provides that the plastic base includes "one or more supports for the oven pan." (R. 140-1 at 15.) Independent Claim 15 states that the oven comprises "a plastic base . . . including a plurality of support posts to support the oven pan . . ." (*Id.*) Hearthware correctly points out that "[d]ifferences among claims can . . . be a useful guide in understanding the meaning of particular claim terms." (R. 142 at 12 (quoting *Phillips*, 415 F.3d at 1314).) Hearthware is not correct, however, that "differences in the independent claims are analogous to differences between an independent and dependent claim where 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'" (*Id.* (quoting *Phillips*, 415 F.3d

6

conclusion that a base must support the oven pan in the claimed invention.

The Court thus agrees with Morningware that "a cooking enclosure" means "an oven housing and a metallic oven pan supported by a base."

## II. "A Heating Unit" Means "A Unit That Provides Heat"

Claims 1 and 3 of the '217 patent both use the term "a heating unit." (R. 140-1 at 14.) Hearthware contends that the term is effectively axiomatic to one skilled in the art, such that the Court need not construe it. (R. 142 at 14.) Morningware, by contrast, argues that the term means "[a] heating unit defined by the cylindrical wall portion of the lower housing, a heater housing, a radiation plate, a fan, and a heating element." (R. 145-1 at 1.)

The Federal Circuit has explained that "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. The Court agrees with Hearthware that the meaning of "a heating unit" is clear as it is used in the asserted claims of the '217 patent, and that the term simply refers to a unit that provides heat.

Morningware bypasses the language of the claims and directs the Court's attention to the summary of the invention and the detailed description of the preferred embodiment. (R. 140 at 16-18.) This intrinsic evidence, Morningware contends, reveals that "the inventors have defined the term 'heating unit' to coin a new expression with which to communicate the invention." (*Id.* at 17.) Claim construction must begin with the claims themselves, however, and the claims do

_____

at 1314).) *See Curtiss-Wright Flow Control Corp v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006).

not suggest that Morningware's proposed construction is the correct one. *See Becton, Dickinson & Co. v. Tyco Healthcare Group, L.P.*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Claim construction 'begins and ends in all cases with the actual words of the claim.'") (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)). In this case, nothing in the claims suggests a limitation on the meaning of "a heating unit" beyond a unit that provides heat within the structure of the electric oven as described by the claims. This interpretation comports with the background of the invention, which notes that "[i]t is common [in the prior art] for counter-top ovens to include a power head having a heating unit that is used to heat the cooking enclosure." (R. 140-1 at 11.)

To support its proposed construction, Morningware relies on four references to "heating unit" in the specification. (R. 140 at 17.) It first looks to the summary of the invention, which states, "[i]n accordance with another aspect of the invention . . . [t]he heating unit includes an electric heating element arranged to direct heat toward the interior surface of the oven pan." (R. 140-1 at 11.) The summary of the invention also provides that, "[i]n accordance with one aspect of the invention . . . [t]he heating unit includes a heating element for heating the cooking enclosure." (*Id.*) The summary further explains that, "[a]ccording to one aspect of the invention . . . [t]he heating unit includes a heater housing defining a cavity, a heating element mounted in the cavity for heating the cooking enclosure, and a protective grid mounted to the heater housing between the heating element and the cooking enclosure." (*Id.* at 12.)

The Court does not agree with Morningware that the three preceding descriptions of a "heating unit" limit the meaning of the term as used in Claims 1 and 3 of the '217 patent. The summary of the invention clearly qualifies its descriptions of a "heating unit" as being directed

to "one aspect of the invention" or "another aspect of the invention." The summary of the invention thus describes an embodiment of the invention, and "without more the court will not limit claim terms to a preferred embodiment described in the specification." *See Flexhead Indus., Inc. v. Easyflex, Inc.*, 2008 WL 4813797, at *6 (D. Mass. Nov. 3, 2008) (quoting *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005)).

Similarly, the Court does not agree with Morningware's reliance on the detailed description of the preferred embodiment, which provides that, "[t]ogether the cylindrical wall portion 68 of the lower housing 66, the heater housing 86, the radiation plate 88, the fan 80, and the heating element 84 define a heating unit 108 that extends into the cooking enclosure 21 . . ." (*Id.* at 13.) As the Federal Circuit has recently made clear, "we do not generally limit claims to the preferred embodiment." *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010). Nothing in the claims or the broader intrinsic evidence suggests that the inventors meant to limit the term "heating unit" in the manner Morningware suggests.

In reply, Morningware contends that the plain meaning of "a heating unit" would "seemingly cover any heating means . . . [and] would result in a claim that does not provide any limitation nor [*sic*] any notice to the public as to what would infringe and what would not infringe." (R. 144 at 5.) Its contention is misplaced. "A heating unit" is merely a term within a larger claim. It is not a claim in itself. Claims 1 and 3 both require that the relevant heating unit extend into the cooking enclosure through an upper surface with an opening therein. (R. 140-1 at 14.) The claims merely require that the relevant unit be capable of both providing heat and fitting into the electric oven in the manner just described.

The meaning of "heating unit" is therefore clear from the claims alone, and—as

previously noted—nothing in the specification suggests a different construction.  The Court

therefore construes "a heating unit" as "a unit that provides heat."

### III. "A Fan Chamber" Means "One or More Enclosed Spaces, Through Which a Fan Moves Air, That Are in the Power Head and Above Both the Cooking Enclosure and the Heating Unit"

The parties next dispute the meaning of the term "a fan chamber," which appears in both

Claims 1 and 3 of the '217 patent.  (R. 140-1 at 14.)  Hearthware argues that the Court should

construe "a fan chamber" to mean "one or more enclosed spaces in the power head through

which a fan moves air."  (R. 145-1 at 1.)  Conversely, Morningware submits that the term means

"a single chamber in the power head defined by the dome-shaped upper housing and a mica

sheet positioned above the opening to the cooking enclosure and the heating unit."  (*Id.*)

As noted previously, claim construction begins with the language of the claims

themselves.  *See Becton*, 616 F.3d at 1254.  The relevant claims make clear that a fan chamber

must be above the cooking enclosure and the heating unit, that there must be a fan mounted in it,

and that a plurality of air inlets must allow a cooling air flow into the fan chamber.  (R. 140-1 at

14.)  The claims also reveal that "a power head . . . includ[es] . . . a fan chamber."  (*Id.*)

Furthermore, as per the Federal Circuit's well-established rule of construction that "a" or "an"

generally means "one or more," the claims' reference to "a fan chamber" presumably

encompasses both a single fan chamber and several.  *See, e.g.*, *Baldwin Graphic Sys., Inc. v.

Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008) (observing that the "exceptions to this rule

are extremely limited: a patentee must 'evince a clear intent' to limit 'a' or 'an' to 'one'").  A

plain reading of the claims is therefore inconsistent with Morningware's proposed construction,

which purports to limit a fan chamber to "a single chamber."

Morningware argues that the intrinsic evidence reveals that "a fan chamber" is limited to "a single chamber." (R. 140 at 19-20.) It points out numerous references in the specification to "a fan chamber" and "the fan chamber," but fails to address the Federal Circuit's instruction that "[t]he subsequent use of definite articles 'the' or 'said' in a claim that refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Baldwin*, 512 F.3d at 1342. Of course, the Federal Circuit has also explained that this "general rule does not apply when the context clearly evidences that the usage is limited to the singular." *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290 (Fed. Cir. 2008). Yet, Morningware can point only to the use of the indefinite article throughout the specification.[2] Without more, such evidence is insufficient to rebut the Federal Circuit's presumption.

Morningware argues for the first time in its reply that Hearthware's proposed construction founded on "one or more enclosed spaces" is improper because the claim element, so construed, would not satisfy the enablement condition of 35 U.S.C. § 112. (R. 144 at 5-6.) Morningware has waived this argument. *See, e.g.*, *MSTG, Inc. v. AT&T Mobility, L.L.C.*, No. 08-CV-7411, 2011 WL 221771, at *5 n.2 (N.D. Ill. Jan. 20, 2011) ("[C]ourts do not consider arguments that are asserted for the first time in a reply.") (citing *United States v. Hughes*, 970 F.2d 227, 235 n.6 (7th Cir. 1992)).

Morningware's argument that the Court must define "a fan chamber" "by the dome-shaped upper housing and a mica sheet positioned above the opening to the cooking enclosure

---

[2] Morningware also points to the prosecution history, in which Morningware purported to distinguish an anticipatory reference on the ground that it did "not disclose or suggest . . . a plurality of air outlets arranged in such a lower surface to direct a cooling air flow from a fan chamber . . ." (R. 140 at 19.) Once more, however, the use of the indefinite article does not overcome the presumption that "a" or "an" refers to "one or more." *Baldwin*, 512 F.3d at 1342.

and the heating unit" also fails.  (R. 140 at 20.)  This highly detailed definition finds no support in the claims.  References to a "mica sheet" and "domed shaped" appear only in the detailed description of the preferred embodiment.  (R. 140-1 at 12-14.)  As noted above, it is generally not appropriate to import limitations to the claims from the preferred embodiment, and so the Court declines to do so in this instance.  *Ambu*, 618 F.3d at 1372.

Morningware also argues that the fan chamber must be "entirely" above the opening to the cooking enclosure and the heating unit, such that there can be no overlap.  (*Id.*; R. 140 at 20.) The claims require only that a fan chamber be above the cooking enclosure and the heating unit. (R. 140-1 at 14.)  To support its assertion that the fan chamber must be "completely above" the opening to the cooking enclosure and the heating unit, Morningware appeals only to the detailed description of the preferred embodiment.  The Court declines to import a limitation that the fan chamber be "completely" or "entirely" above the opening to the cooking enclosure and the heating unit, and instead construes "a fan chamber" in a manner consistent with the claims and other intrinsic evidence.  Thus, "a fan chamber" means "one or more enclosed spaces, through which a fan moves air, that are in the power head and above both the cooking enclosure and the heating unit."

## IV.    "A Fan" Means "One or More Fans"

The parties dispute the meaning of "a fan," which is a term that appears in both Claims 1 and 3 of the '217 patent.  Hearthware submits that the term encapsulates "one or more fans."  (R. 145-1 at 1.)  Morningware argues that the term means only "a single fan."  (*Id.*)

Morningware argues that the claims' and larger specification's reference to "a" fan means that the term is limited to a single fan.  This argument is equivalent to the one

Morningware makes with respect to "a fan chamber," which it argued constitutes a single chamber.[3]  As noted, the Federal Circuit has explained that courts should presume that a claim that uses the indefinite article purports to claim "one or more."  *Baldwin*, 512 F.3d at 1342.  As with its argument that "a fan chamber" is limited to one chamber, Morningware has failed to evidence a clear intent on the patentee's part to limit the relevant term to a single fan.

For that reason, the Court finds that "a fan" means "one or more fans."

**V.     "A Cooling Manifold Surrounding Said Opening and Including a Lower Surface Facing Said Upper Surface Outside of Said Cooking Enclosure" Means "A Flange and Air Outlets Extending from the Lower Portion of the Power Head and Surrounding Said Opening and Including a Lower Surface Facing Said Upper Surface Outside of Said Cooking Enclosure"**

The parties disagree on the proper construction of the phrase "a cooling manifold surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure," which appears in Claim 1 of the '217 patent.  (R. 145-1 at 1.)  Hearthware contends that the phrase means "a flange and air outlets extending from the lower portion of the power head and surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure."[4]  (*Id.*)  Morningware proposes a different construction, namely "a cooling manifold defined by the radial annular flange of the power head and air outlets in the flange, and surrounding the opening of the cooking enclosure wherein the air outlets are arranged only in the radial annular flange."  (*Id.*)

---

[3] Indeed, Morningware incorporated that previous argument by reference to the current dispute.  (R. 140 at 21.)

[4] Much of Hearthware's proposed construction repeats the language in the contested phrase.  Indeed, it differs only in that it construes "a cooling manifold" as "a flange and air outlets extending from the lower portion of the power head."  (R. 145-1 at 1.)

Morningware faces a problem in that its proposed construction is identical to what it advocates with respect to a closely related phrase that appears in Claim 3 of the '217 patent. The phrase in Claim 3 differs only in that it excludes the term "including a lower surface."[5] The patentee added that term to Claim 1 during prosecution "to characterize the cooling manifold as including a lower surface facing the upper surface outside of the cooking enclosure, and the plurality of air outlets as being arranged in the lower surface." (R. 142 at 25; R. 140-2 at 69.) At a minimum, this suggests that the language "including a lower surface" is significant, and Morningware fails to explain why the term should not impact the Court's construction.

Hearthware criticizes Morningware's failure to account for the term "including a lower surface" by invoking the doctrine of claim differentiation. (R. 142 at 25.) Claims 1 and 3 are both independent claims, however, and so that doctrine's instruction that narrower dependent claims presumably do not limit broader independent claims does not apply. *Cf. Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1360 (Fed. Cir. 2010). Nevertheless, with respect to claim construction applied to two independent claims, the Federal Circuit has noted that "claim differentiation takes on relevance in the context of a claim construction that would render additional . . . language in another independent claim superfluous." *Velan*, 438 F.3d at 1380. This principle undermines Morningware's suggested interpretation because it would render the term "including a lower surface" defunct.

More generally, Morningware fails to justify its proposed construction: "a cooling manifold defined by the radial annular flange of the power head and air outlets in the flange, and

<hr />

[5] The phrase in Claim 3 is "a cooling manifold surrounding said opening and facing said upper surface outside of said cooking enclosure." (R. 145-1.)

surrounding the opening of the cooking enclosure wherein the air outlets are arranged only in the radial annular flange." (R. 140 at 23-25.) It argues that the detailed description of the preferred embodiment describes the "cooling manifold" as "the flange 70 and outlets 112," and submits that the description shows that the cooling manifold surrounds "the opening 110 of the housing 18," while facing "the surface 56 outside of the cooking enclosure 21." (R. 140 at 24.) Neither the claims nor other intrinsic evidence, however, suggests that the patentee meant to limit the scope of the invention to this particular embodiment. Indeed, Morningware does not argue that any source other than the detailed description suggests that the cooling manifold is the "radial annular flange" and that "the air outlets are arranged only in the radial annular flange." (*Id.*) Accordingly, the Court declines to adopt Morningware's proposed construction. *See Ambu*, 618 F.3d at 1372.

Hearthware's construction, which defines "a cooling manifold" as "a flange and air outlets extending from the lower portion of the power head," finds support in the language of the claims and throughout the specification. Claim 1 explicitly states the claimed electric oven is comprised of "a cooling manifold . . . including a plurality of air outlets arranged in said lower surface to direct the cooling air flow . . . toward the upper surface . . ." (R. 140-1 at 14.) This bolsters Hearthware's proposed definition. Furthermore, although the claims do not make reference to "a flange," neither party disputes that the proper construction of "a cooling manifold" requires the same. (R. 145-1 at 1.)

The Court therefore interprets "a cooling manifold" as "a flange and air outlets extending from the lower portion of the power head" and so construes "a cooling manifold surrounding said opening and including a lower surface facing said upper surface outside of said cooking

15

enclosure" as "a flange and air outlets extending from the lower portion of the power head and surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure."

**VI.  "A Cooling Manifold Surrounding Said Opening and Facing Said Upper Surface Outside of Said Cooking Enclosure" Means  "A Flange and Air Outlets Extending from the Lower Portion of the Power Head, and Surrounding Said Opening and Facing Said Upper Surface Outside of Said Cooking Enclosure"**

The Court next construes the disputed claim language: "a cooling manifold surrounding said opening and facing said upper surface outside of said cooking enclosure," which appears in Claim 3 of the '217 patent.  (R. 145-1 at 1.)  Hearthware submits that the language means "a flange and air outlets extending from the lower portion of the power head, and surrounding said opening and facing said upper surface outside of said cooking enclosure."  (*Id.*)  Morningware advocates precisely the same interpretation as it did with respect to the above-construed claim language: "a cooling manifold surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure," which appears in Claim 1 of the '217 patent.  (*Id.*)  As noted in the previous section, Morningware's proposed interpretation fails to account for the presence of "including a lower surface" in Claim 1 and for the absence of the same in Claim 3.

Despite offering a significantly different construction, Morningware states in its claim-construction brief that it "agrees with Hearthware's proposed construction . . . with a few exceptions that the term "cooking enclosure" and "fan chamber" be construed based on the [*sic*] Morningware's proposed construction . . ."  (R. 140 at 26.)  Morningware's reference to

"cooking enclosure"[6] and "fan chamber"[7] does not relate to the claim language that the Court

construes in the present section, and so Morningware concedes the accuracy of Hearthware's

definition.

Beyond that concession, the Court adopts Hearthware's proposed construction for the

reasons discussed in the previous Section. Its construction of "a cooling manifold" as "a flange

and air outlets" comports with the explicit language of the claims, as does its further definition of

the manifold as "extending from the lower portion of the power head." Furthermore,

Hearthware's proposed definition accounts for the absence of the term, "including a lower

surface," in Claim 3.

The Court therefore construes "a cooling manifold surrounding said opening and facing

said upper surface outside of said cooking enclosure" as "a flange and air outlets extending from

the lower portion of the power head, and surrounding said opening and facing said upper surface

outside of said cooking enclosure."

**VII.** **"To Direct the Cooling Air Flow from the Fan Chamber Toward the Upper Surface of the Cooking Enclosure to Cool the Upper Surface" Means "To Guide the Cooling Air Flow from the Fan Chamber in the Direction of the Upper Surface of the Cooking Enclosure to Cool the Upper Surface"**

The next disputed claim language, which appears in both Claims 1 and 3 of the '271

patent, is "to direct the cooling air flow from the fan chamber toward the upper surface of the

---

[6] The Court construes "cooking enclosure" as "an oven housing and a metallic oven pan supported by a base." *See* Section I *supra*.

[7] The Court construes "fan chamber" to mean "one or more enclosed spaces, through which a fan moves air, that are in the power ahead and above both the cooking enclosure and the heating unit." *See* Section III *supra*.

cooking enclosure to cool the upper surface." (R. 145-1 at 1.) Hearthware argues that the language means "to guide the cooling air flow from the fan chamber in the direction of the upper surface of the cooking enclosure to cool the upper surface." (*Id.*) Morningware proposes a different construction, which is "to direct the cooling air downward from the fan chamber at the upper surface of the cooking enclosure to cool the upper surface." (*Id.*)

The Court adopts Hearthware's construction, which comports closely with the language of the claims. Not only does Morningware fail to provide any argument why the Court should adopt its proposed construction, it concedes the accuracy of Hearthware's construction. (R. 140 at 26.) Morningware qualifies its concession only insofar as it argues that it believes "that the term [*sic*] 'cooking enclosure' and 'fan chamber' be construed based" on its proposed construction. (*Id.*) The Court has construed these terms above.

The Court therefore construes "to direct the cooling air flow from the fan chamber toward the upper surface of the cooking enclosure to cool the upper surface" as "to guide the cooling air flow from the fan chamber in the direction of the upper surface of the cooking enclosure to cool the upper surface."

## VIII. "Wherein Said Heating Unit Is Spaced from Said Opening to Define a Hot Gas Vent Surrounding Said Heating Unit and Located Between Said Heating Unit and Said Air Outlets to Vent Hot Gas from the Inside of the Cooking Enclosure for Mixture with Said Cooling Air Flow from Said Air Outlets" Requires No Construction

The last disputed claim language, which appears in Claim 3 of the '217 patent, is "wherein said heating unit is spaced from said opening to define a hot gas vent surrounding said heating unit and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets." (R.

145-1 at 2.)

Morningware argues that the Court should construe the claim to mean "wherein the heating unit is spaced from said opening of the cooking enclosure by the equally spaced lands engaged with the plurality of ramped tabs to define a hot gas vent and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets." (*Id.*) Hearthware submits that the language means "wherein said heating unit is spaced from said opening to define a hot gas vent surrounding said heating unit and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets." (*Id.*)

In its reply brief, Morningware concedes the accuracy of Hearthware's proposed construction save for the terms "a hot gas vent," "heating unit," and "cooking enclosure." (R. 144 at 3.) This statement, however, amounts to a concession that Hearthware's construction is accurate in its entirety. Hearthware's proposed definition of "wherein said heating unit is spaced from said opening to define a hot gas vent surrounding said heating unit and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets" does not purport to define the terms "a hot gas vent," "heating unit," or "cooking enclosure." Furthermore, the Court has already construed the meaning of "a heating unit" and "a cooking enclosure."[8]

Morningware nevertheless submits in its reply brief that the term "a hot gas vent" is "still at issue." (R. 144 at 3.) It proposes defining "a hot gas vent" as a "heating unit [that] is spaced

---

[8] *See* Sections I & II, *supra*.

from said opening of the cooking enclosure by the equally spaced lands engaged with the plurality of ramped tabs." (R. 145-1 at 2.) Hearthware, implicitly contending that the claim language is clear, articulates a proposed construction identical, in relevant part, to the claim language itself. (*Id.*) This language defines "a hot gas vent" as a "heating unit [that] is spaced from said opening." (*Id.*) The relevant question, then, is whether the Court should construe "a hot gas vent" for the purpose of Claim 3 to require that "said opening" be "of the cooking enclosure by the equally spaced lands engaged with the plurality of ramped tabs."

Nothing in the claims suggests such an interpretation. To support its proposed construction, Morningware appeals to the detailed description of the preferred embodiment. (R. 140 at 27; R. 140-1 at 12.) This description, Morningware points out, provides "the only description of the hot gas vent" and "teaches that 'wall 68 and the flange 70 are spaced from the cylindrical ring 58 of the housing 18 by the tabs 74 to define a hot gas vent 118 that surrounds the heating unit 108 between the heating unit 108 and the outlets 112 to vent hot gas, such as steam, from the inside of the cooking enclosure.'" (*Id.*) As the Court has observed numerous times above, however, one should not import limitations from the specification into the claims absent a clear intent on the patentee's part to limit the scope of the claimed invention in that manner. *See, e.g.*, *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005).

Given the plain meaning of the claims that the hot gas vent is located between the heating unit and the air outlets, and the absence of any evidence beyond the detailed description suggesting any limitation with respect to "equally spaced lands" or "ramped tabs," the Court concludes that the language requires no construction.

## CONCLUSION

For these reasons, the Court concludes as follows:

- "A cooking enclosure" means "an oven housing and a metallic oven pan supported by a base."

- "A heating unit" means "a unit that provides heat."

- "A fan chamber" means "one or more enclosed spaces, through which a fan moves air, that are in the power head and above both the cooking enclosure and the heating unit."

- "A fan" means "one or more fans."

- "A cooling manifold surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure" means "a flange and air outlets extending from the lower portion of the power head and surrounding said opening and including a lower surface facing said upper surface outside of said cooking enclosure."

- "A cooling manifold surrounding said opening and facing said upper surface outside of said cooking enclosure" means "a flange and air outlets extending from the lower portion of the power head, and surrounding said opening and facing said upper surface outside of said cooking enclosure."

- "To direct the cooling air flow from the fan chamber toward the upper surface of the cooking enclosure to cool the upper surface" means "to guide the cooling air flow from the fan chamber in the direction of the upper surface of the cooking enclosure to cool the upper surface."

- "Wherein said heating unit is spaced from said opening to define a hot gas vent surrounding said heating unit and located between said heating unit and said air outlets to vent hot gas from the inside of the cooking enclosure for mixture with said cooling air flow from said air outlets" requires no construction.

Dated: February 23, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

21