# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4348 | **DATE** | 4/12/2011 |
| **CASE TITLE** | Morningware, Inc vs. Hearthware Home Products, Inc. | | |

**DOCKET ENTRY TEXT**

The Court grants IBC-Hearthware, Inc.'s motion for partial reconsideration [166.]

■ [ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

On February 23, 2011, the Court issued its construction of eight disputed claim terms. (R. 163.) On March 9, 2011, IBC-Hearthware moved for partial reconsideration, requesting that the Court reconsider its construction of "cooking enclosure" to mean "an oven housing and a metallic oven pan supported by a base." (R. 167.) For reasons explained below, the Court grants Hearthware's motion for reconsideration and concludes that "cooking enclosure" requires no construction.

## BACKGROUND

The Court presumes familiarity with the case, including its February 23, 2011, Opinion ("the Opinion"). Briefly, though, Hearthware alleges that Morningware's use and sale of the Halogen Convection Oven Model H0-1200 infringed U.S. Patent No. 6,201,217 ("the '217 patent").

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

In concluding that "cooking enclosure" means "an oven housing and a metallic oven pan supported by a base," the Court relied first on the Summary of the Invention, which specifies that "[t]he cooking enclosure is defined by an oven housing and an oven pan located beneath the oven housing." (R. 140-1 at 11.) This definition, the Court found, meant that the "cooking enclosure" constitutes "an oven housing" and "an oven pan." (R. 163 at 5.) In finding that the "oven pan" that forms part of the "cooking enclosure" must be metallic, the Court looked to the Summary of the Invention, which states that "[t]he cooking enclosure includes . . . a metallic oven pan . . ." (*Id.*) It also observed that the Abstract provided that the claimed invention "include[s] . . . a metallic oven pan." (*Id..*) It further looked to the Background of the Invention, which provides that "it is . . . known for the lower portion of the cooking enclosure . . . to be defined by a metallic pan . . ." (*Id.*) In addition, the Court observed that the Detailed Description of the Preferred Embodiment describes an exemplary embodiment of the invention, which entails the use of a "metallic oven pan." (*Id.*) Finally, the Court concluded that a base must support the "oven pan" within the "cooking enclosure" because the Detailed Description of the Preferred Embodiment reveals that "[t]he base further includes one or more supports for the oven pan . . ." (*Id.* at 6.) The Court also noted that the Summary of the Invention provides that, "[a]ccording to one aspect of the invention . . . an electric oven includes . . . a cooking enclosure supported by the base[.]" (*Id.*)

On the basis of this evidence, the Court adopted the construction that Hearthware now challenges.

## LEGAL STANDARD

Hearthware purports to bring its motion for reconsideration under Federal Rule of Civil Procedure 59(e), which governs motions "to alter or amend a judgment." Fed. R. Civ. P. 59(e). Rule 59(e) does not apply in the present case, however, because the Court has not entered judgment in favor of any party. *See, e.g.*, *Santos v. The Boeing Co.*, No. 02-CV-9310, 2004 WL 2515873, at * 2 (N.D. Ill. Nov. 5, 2004) ("Rule 59(e) only applies when a party seeks the reconsideration of a ruling that was accompanied with a final judgment. No final judgment has been entered against Boeing thus far in the instant action and thus Boeing's reference to Rule 59(e) is improper.") (citations omitted).

Hearthware should have brought its motion under Federal Rule of Civil Procedure 54(b), which permits the Court to reconsider its interlocutory orders at any time. *See, e.g.*, *City of Livonia Employees' Retirement Sys. v. The Boeing Co.*, No. 09-CV-7143, 2011 WL 824604, at *3 (N.D. Ill. Mar. 7, 2011) ("It is beyond question that before final judgment is entered on all issues, Rule 54(b) authorizes reconsideration of interlocutory orders at any time."); *see also United States v. Am. Inst. of Real Estate Appraisers of Nat'l Assoc. of Realtors*, 590 F.2d 242, 245 (7th Cir. 1978) (observing that, "[u]nder Rule 54(b), . . . the District Court may . . . reconsider the order any time before the entry of final judgment"); *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case."). The Court construes Hearthware's motion as a motion for reconsideration under Rule 54(b).

The standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b). *See, e.g.*, *Sunrise Opportunities, Inc. v. Regier*, No. 05-CV-2825, 2006 WL 581150, at *4 n.5 (N.D. Ill. Mar. 7, 2006). Motions for reconsideration serve the limited function of allowing the Court to correct manifest errors of law or fact or to consider newly discovered material evidence. *See Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006). Such a motion "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Whether to grant a motion for reconsideration "is entrusted to the sound judgment of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

In patent cases, however, a district court may engage in "rolling claim construction," pursuant to which the court "revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010). Ultimately, the decision whether to grant a motion for reconsideration is within the Court's discretion. Even if the operative

legal standard does not compel reconsideration, the Court may nevertheless grant a motion for reconsideration if there are good reasons to do so. *See, e.g.*, *Cobell*, 355 F. Supp. at 540.

## DISCUSSION

The Court previously construed "cooking enclosure" to mean "an oven housing and a metallic oven pan supported by a base." (R. 163 at 2.) Having read the parties' briefs and having scrutinized the '217 patent, the Court concludes that its previously adopted construction improperly imported limitations from the specification into the claims. It therefore grants Hearthware's motion for reconsideration, and concludes that "cooking enclosure" requires no construction.

In construing the meaning of a disputed term, the Federal Circuit has instructed that "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Simultaneously, however, "[w]hen consulting the specification to clarify the meaning of claim terms, courts must not import limitations into the claims from the specification." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010).

These claim-construction principles can come into tension in certain instances, as the Federal Circuit has itself recently recognized. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1255 (Fed. Cir. 2011) ("This court has often acknowledged the fine line between reading a claim in light of the specification, and importing a limitation from the specification into the claim.") Courts can resolve the tension, however, by focusing on the question of the patentee's intent. *See Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) (holding that courts can import limitations into the claims from the patent's written description only if "the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" (quoting *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005)).

Applying these principles, the Court agrees with Hearthware that the term "cooking enclosure" as used in Claims 1 and 3 does not mean "an oven housing and a metallic oven pan supported by a base." The Opinion erred in focusing on the specification to the exclusion of the claim language itself. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ("[T]he claim construction inquiry . . . begins and ends in all cases with the actual words of the claim.") (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)); *Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("First, we look to the claim language. Then we look to the rest of the intrinsic evidence, beginning with the specification and concluding with the prosecution history, if in evidence.") In the present case, reading the term "cooking enclosure" in Claims 1 and 3 in light of other claims in the patent gives rise to a presumption that the disputed term does not require the presence of "a metallic oven pan," "an oven housing," or a base that supports the same.

The Federal Circuit has held that, with respect to two or more independent claims, "claim differentiation takes on relevance in the context of a claim construction that would render additional . . . language in another independent claim superfluous." *Curtiss-Wright Flow Control Corp v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). Claims 1 and 3 of the '217 patent claim "a cooking enclosure including an upper surface with an opening therein[.]" (R. 140-1 at 14.) This language provides no indication that the "cooking enclosure" constitutes "an oven housing and a metallic oven pan supported by a base." Other independent claims in the '217 patent, however, are relevant.

Independent Claim 5 claims "a cooking enclosure including an oven housing and a metallic oven pan having interior and exterior surfaces and located beneath the oven housing." (*Id.* at 15.) If the Court were to define "cooking enclosure" in Claims 1 and 3 as necessarily including an "oven housing and a metallic oven pan,"then the language in Claim 5 that "a cooking enclosure" includes an oven housing and a metallic oven pan would be superfluous. This is problematic because "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Tandon Corp. v. United States Int'l Trade*

*Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987).

Independent Claim 12 claims "a cooking enclosure supported by the base, the cooking enclosure defined by an oven housing and an oven pan located beneath the oven housing and surrounded by an interior of said base[.]" (R. 140-1 at 15.) Furthermore, Claim 15 claims "a cooking enclosure including an oven housing and a metallic oven pan having interior and exterior surfaces and located beneath the oven housing[.]" (*Id.*) This claim language is superfluous if "cooking enclosure" means "an oven housing and a metallic oven pan supported by a base."

This examination of the claim language gives rise to a presumption that "cooking enclosure" requires neither an oven housing nor a metallic oven pan supported by a base. Nevertheless, this presumption is not determinative. *Velan*, 438 F.3d at 1381 ("Claim differentiation is a guide, not a rigid rule."); *Seachange Int'l, Inc. v. C-Cor, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (observing that the doctrine "only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction") (quoting *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000)); *see also Springfield Co., Inc. v. Staubli Corp.*, 152 F.3d 948, at *2 (Fed. Cir. 1998) (observing that "claim differentiation in this case does not give rise to the same presumption that it would in a case in which, for instance, the second claim was dependent on the first").

In this respect, the Court must read the claim term "cooking enclosure" in light of the specification because "the doctrine of claim differentiation does not serve to broaden claims beyond their meaning in light of the specification, and does not override clear statements of scope in the specification and the prosecution history." *Toro Co. v. White Consol. Inds., Inc.*, 199 F.3d 1295 (Fed. Cir. 1999).

Evidence from the specification does not overcome the presumption that "cooking enclosure," as it appears in Claims 1 and 3 of the '217 patent, does not require an oven housing and a metallic oven pan supported by a base. This is because the specification does not "evince a 'clear intention' to limit the claim terms to a specification embodiment[.]" *Trading Techs.*, 595 F.3d at 1354 (citations omitted).

First, the parties do not dispute that the cooking enclosure described in the Preferred Embodiment involves a metallic oven pan and an oven housing supported by a base. (R. 140-1 at 12-14.) This does not, however, warrant overcoming the presumption because courts "do not generally limit claims to the preferred embodiment." *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010).) It is clear that Claims 1 and 3 use broader language than independent claims 5, 12, and 15, all of which impose limitations on the "cooking enclosure" akin to those revealed by the Preferred Embodiment. Yet, these limitations do not appear in Claims 1 and 3.

Second, the Summary of the Invention states: "In accordance with another aspect of the invention, a counter-top electric oven for cooking food includes a cooking enclosure . . . and a plastic base that supports the cooking enclosure. The cooking enclosure includes an oven housing and a metallic oven pan."[1] (R. 140-1 at 11.) This language does not limit the meaning of "cooking enclosure" for the purpose of Claims 1 and 3, however, because statements describing "another aspect of the invention" generally refer to embodiments of the invention rather than to the invention as a whole. *See Flexhead Indus., Inc. v. Easyflex, Inc.*, Nos. 06-CV-11897, 06-CV-11898, 2008 WL 4813797, at *3 (D. Mass. Nov. 3, 2008) (citing cases); *cf. Trading Techs.*, 595 F.3d at 1353 ("This court recognizes that this interpretation relies heavily on the specification and risks reading improperly a preferred embodiment into the claim. This court takes some comfort against this risk from the inventors' use of the term 'the present invention' rather than 'a preferred embodiment' or just 'an embodiment.'").

Third, the Background of the Invention explains that "it is . . . known" in the prior art relating to counter-top electric ovens "for the lower portion of the cooking enclosure of such ovens to be defined by a metallic pan having an interior surface at which the heat generated by the heating unit is directed." (R. 140-1 at 11.) This does not compel a finding that one skilled in the art would understand "cooking enclosure" to require a metallic

---

[1] The Summary of the Invention further provides: "According to one aspect of the invention . . . [t]he cooking enclosure is defined by an oven housing and an oven pan located beneath the oven housing." (R. 140-1 at 11.)

pan. Indeed, the Background of the Invention distinguishes this manner of construction, pointing out that "[o]ne problem associated with this construction is that the metallic plate can transfer sufficient heat from the heating unit to damage housing components contacting the pan[.]" (*Id.*)

The Background of the Invention also observes that a problem associated with the prior art is heat that can "potentially increase the temperature of the oven housings to a point where a user cannot comfortably access the cooking enclosure." (*Id.*) This might suggest that people skilled in the art would understand cooking enclosures to entail the presence of one or more oven housings, but it falls short of the "clear intention" required to limit the claim terms. *Trading Techs.*, 595 F.3d at 1354.

The strongest argument that "cooking enclosure" as used in Claims 1 and 3 comprises a base that supports a metallic oven pan involves the Abstract, which provides that the claimed counter-top electric oven has features that include "a base with thermally insulated supports for a metallic oven pan of the cooking enclosure." (R. 140-1 at 2.) This language suggests that the invention's cooking enclosure incorporates a base that supports a metallic oven pan. The abstract is relevant to determining the scope of the invention. *See Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n.* (Fed. Cir. 2000) ("We have frequently looked to the abstract to determine the scope of the invention, and we are aware of no legal principle that would require us to disregard that potentially helpful source of intrinsic evidence as to the meaning of claims.") (citations omitted); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1207-10 (Fed. Cir. 2008); *Fenner Inv. Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 635 (E.D. Tex. 2009) ("A patent's abstract may often be helpful in determining the proper meaning of claim terms."). It is particularly illuminative with respect to the meaning of a "cooking enclosure" because the Abstract applies to the invention as a whole, rather than to a particular embodiment. *See generally C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term.").

The relevant question, then, is whether this language in the Abstract reveals that the inventor's use of the term "cooking enclosure" in Claims 1 and 3 necessarily includes a base that supports a metallic oven pan. The Court answers this question in the negative. Construing the disputed term in the context of all the intrinsic evidence, there is no *clear* intention on the inventor's part to limit the claimed "cooking enclosure" in this manner. *See generally UTStarcom, Inc. v. Starent Networks Corp.*, No. 07-CV-2582, 2009 WL 3122554, at *11 (N.D. Ill. Sept. 22, 2009) ("[T]he abstract is but one factor in our determination of the proper claim construction. We choose not to give greater weight to the abstract than to any other evidence found in the intrinsic record of the patent and its prosecution history.").

## CONCLUSION

For the preceding reasons, the Court grants Hearthware's motion for reconsideration and finds that the disputed term, "cooking enclosure," requires no construction. The Court agrees with Hearthware that, construing the term in light of the specification and in light of claim-differentiation analysis, "cooking enclosure" as used in Claims 1 and 3 of the '217 patent does not command any special meaning. (R. 167 at 11.) *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").