# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4348 | **DATE** | 10/6/2011 |
| **CASE TITLE** | Morningware, Inc vs. Hearthware Home Products, Inc. | | |

**DOCKET ENTRY TEXT**

The Court grants Morningware's motion to compel [202] and its request for attorneys' fees incurred in connection with its motion and denies Morningware's request for costs related to taking Messrs. Choi, Cha, and Kim's depositions. Morningware shall depose Mr. Kim on or before 10/21/11, and it shall submit an attorneys' fee petition on or before that date.

■[ For further details see text below.]    Notices mailed by Judicial staff.

# STATEMENT

Before the Court is Morningware's motion to compel the deposition of Charles Kim and its request for attorneys' fees. Hearthware opposed the motion and also seeks attorneys' fees. For the reasons discussed below, the Court grants Morningware's motion to compel and its request for attorneys' fees incurred in connection with its motion and denies Morningware's request for costs related to taking Messrs. Choi, Cha, and Kim's depositions. Morningware shall depose Mr. Kim on or before October 21, 2011. The Court also denies Hearthware's request for attorneys' fees.

## BACKGROUND

On July 20, 2009, Plaintiff Morningware, Inc. ("Morningware"), filed its Complaint against Hearthware Home Products, Inc. ("Hearthware"), alleging that Hearthware had commercially disparaged Morningware's goods, had committed the common-law tort of unfair competition, and had violated the Deceptive Trade Practices Act of Illinois, as well as the unfair competition and product-disparagement provisions of the Lanham Act. (R. 1, Complaint.) Separately, Hearthware brought an action against Morningware alleging that Morningware's use and sale of the Halogen Convection Oven Model H0-1200 infringed Hearthware's U.S. Patent No. 6,201,217 ("the '217 patent"). (*IBC-Hearthware, Inc. v. Morningware, Inc*., No. 09-CV-4903 (N.D. Ill.) (R. 1).) The Court consolidated both cases on August 26, 2009. (*Id*., R. 19.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On October 9, 2009, Morningware issued interrogatories to Hearthware, including an interrogatory that requested Hearthware to "[d]escribe all efforts by Hearthware (including its agents and attorneys) to determine whether Morningware's counter-top ovens infringed any claims of the patent prior to the time Hearthware filed the Complaint on August 10, 2009." (R. 110-2, Hearthware's Objs. and Resps. to First Set of Interrogs. at 9.) Morningware clarified that "the term 'efforts' includes, but is not limited to the identity of all individuals who were involved in such efforts, a detailed description of the activities of each individual identified, the dates when such efforts took place, all documents and things considered by each individual, and all documents relating to any such efforts including any opinions that were prepared." (*Id*.) On March 8, 2010, the Court granted Morningware's motion to compel Hearthware to respond to certain of Morningware's interrogatories, including the one described above, and ordered that Hearthware submit supplemental responses to such interrogatories produce a supplemental privilege log. (R. 111)

In its supplemental response to Morningware's interrogatories, Hearthware stated that its counsel conducted a patent infringement analysis with respect to the '217 Patent between early June and August 2009 and that counsel conferred with Hearthware employees Mr. Gene Kim and Ms. Yoo Jin Jung regarding tests that Hearthware engineers P.G. Choi and E.Y. Cha performed. (R. 202, Morningware's Mot. at 2.) On its supplemental privilege log, Hearthware also listed Messrs. Choi and Cha as having performed product testing at Hearthware's attorney's request.[1] (R. 202-2, Hearthware's Supp. Priv. Log at 2.) Based on that information, Morningware deposed Messrs. Choi and Cha on July 21, 2011. (R. 202-4, Cha Dep. and 202-5, Choi Dep.) The parties dispute the import of Messrs. Choi and Cha's deposition testimony—Morningware contends that the two employees did not perform the testing as Hearthware had previously represented to them, and Hearthware contends that these two employees testified that they may have been involved with the testing, but they simply do not remember the testing. Hearthware's counsel also posits that Mr. Choi, whose first language is Korean, did not understand the questions Morningware's counsel asked him, despite having a Korean interpreter present at the deposition. A review of Messrs. Choi and Cha's deposition transcripts reveals that neither witness was able to testify intelligently about the pre-filing analysis of Morningware's oven.

It is uncontested that Morningware discovered, for the first time, during Mr. Choi's deposition that Mr. Charles Kim, one of Hearthware's engineers, performed pre-filing testing of Morningware's oven. Hearthware concedes that Mr. Kim had a "greater role in the hands-on application" of the test (R. 208, Hearthware Resp. at 11) and that it did not identify Mr. Kim as having been involved with the testing in its discovery responses or supplemental privilege log, despite the Court's prior order on Morningside's motion to compel. Indeed, after Mr. Choi's deposition, Hearthware further supplemented its interrogatory answer to reflect that Mr. Kim was involved with the pre-filing testing. (*Id*.)

After Messrs. Choi and Cha's depositions on July 21, 2011, Hearthware agreed verbally to make Mr. Kim available for a deposition. (R. 208-1, Aug. 9, 2011 letter from Mr. Tousi to Mr. Bishop.) On August 8, 2011, Morningware filed a motion to compel Mr. Kim's deposition. (R. 195.) On August 9, 2011, Hearthware's counsel sent a letter to Morningware's counsel, confirming his agreement to allow Morningware to depose Mr. Kim and proposing August 18, 2011 for the deposition. (Aug. 9, 2011 letter from Cameron Tousi to Edward Bishop and Nicholas Lee.) Hearthware's counsel also confirmed that they produced "documents relating to

---

[1] On February 23, 2011, the Court issued a Memorandum Opinion and Order construing the disputed claim terms for the '217 patent. The current fact discovery deadline is October 21, 2011.

Hearthware's pre-filing investigation," including IBC-H015022-31, to Morningware.[2] (*Id.*) The following day, Morningware withdrew its motion to compel without prejudice. (R. 197.) Due to scheduling conflicts, the parties thereafter rescheduled Mr. Kim's deposition to August 30, 2011. (Morningware's Mot. at 11.) In a meet and confer session on August 25, 2011, however, Hearthware's counsel informed Morningware's counsel that Mr. Kim's deposition would not go forward because his testimony is subject to the attorney-client privilege. (*Id.* at 11-12.)

On August 29, 2011, Morningware filed a motion to compel, asking the Court to enter an order 1) compelling Charles Kim's deposition; 2) awarding attorneys' fees and costs incurred in connection with Messrs. Choi, Cha and Kim's depositions; and 3) awarding to Morningware "reasonable expenses" incurred in filing the motion to compel. On September 8, 2011, Hearthware responded to the motion, asking the Court to 1) prohibit Morningware from taking additional discovery regarding Hearthware's pre-filing investigation, including Mr. Kim's deposition; 2) deny Morningware's motions for fees and expenses; and 3) award Hearthware attorneys' fees and reasonable expenses incurred in connection with filing its response.

## LEGAL STANDARD

### I. Motion to Compel

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("the scope of discovery should be broad in order to aid in the search for truth"). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450. In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dep't*, 535 F.2d 621, 629 (7th Cir. 2008).

### II. Attorney-Client Privilege and Work Product Doctrine

"In order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). "The purpose of the privilege is to encourage full disclosure and to facilitate open communication between attorneys and their clients." *Id.* (internal citations omitted). "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007). "The burden falls on the party seeking to invoke the privilege to establish all the essential elements." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

Work product protection applies to materials prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3).

---

[2] IBC-H015022-30 are attached to Morningware's motion as Exhibit F. Hearthware also produced a video of Mr. Kim performing the pre-filing testing.

"To establish work product protection, a party must show the primary motivating purpose behind the creation of a document was to aid in possible future litigation ... whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008).

## ANALYSIS

Morningware argues that it is entitled to seek discovery regarding Hearthware's pre-filing patent infringement analysis of Morningware's oven so that it can determine the reasonableness of such analysis in the context of Rule 11. *See* Morningware's Mot. at 12 (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)). Morningware further asserts that the testimony it seeks from Mr. Kim relates to that analysis. Additionally, Morningware contends that Hearthware's privilege argument as to Mr. Kim's testimony fails because Hearthware has waived any attorney-client privilege or work product protection by 1) offering Messrs. Choi and Cha to testify about the testing; and 2) producing to Morningware a PowerPoint presentation regarding the testing and a video of the testing itself.

Hearthware, on the other hand, argues that Mr. Kim's deposition is unnecessary because Hearthware's counsel's pre-suit filing investigation meets the Rule 11 standard. Hearthware also asserts a blanket privilege over Mr. Kim's testimony.

### I. Mr. Kim's Testimony is Relevant

Mr. Kim's testimony is relevant to the claims and defenses of this case. As the Federal Circuit has instructed, "[t]he presence of an infringement analysis plays they key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *View Eng'g, Inc.*, 208 F.3d at 986. "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *Id.* As Hearthware admits, Mr. Kim was involved with the pre-filing testing (Hearthware Resp. at 10), which Hearthware's attorneys claim was part of their pre-filing infringement analysis.

The Court rejects Hearthware's argument that the Court should find, based on the information in Hearthware's interrogatory response, that Hearthware's attorneys conducted a reasonable pre-filing infringement analysis and that the Court should therefore preclude further discovery regarding such analysis. That argument is premature because the reasonableness of Hearthware's pre-filing analysis is not before the Court at this time.[3] Rather, the relevant question is whether Morningware is entitled to discovery as to Hearthware's pre-filing analysis. Hearthware has already conceded that such discovery is appropriate by proffering Messrs. Choi and Cha for depositions and by producing documents and video related to such testing.

Hearthware relies on the Federal Circuit's opinion in *Q-Pharma v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004) in arguing it did not need to perform an actual test of Morningware's oven, but rather it needed only to conduct "a good faith, informed comparison of the claims of a patent against an accused subject

---

[3] Hearthware's actions with respect to Morningware's attempts to discover information about the pre-filing testing–including its reluctance to answer Morningware's interrogatory regarding the testing absent court order and its inability to identify accurately which of its employees performed the testing (even though Hearthware's counsel asserts that the employees performed such testing at their direction)–do not do any favors for its argument that its analysis was reasonable.

matter." (Hearthware Resp. at 4.) *Q-Pharma*, however, does not stand for the broad proposition that a plaintiff need not obtain the allegedly infringing product and test it before filing a patent infringement suit. Indeed, courts in this circuit have held the opposite. *See, e.g., Centillon Data Sys., LLC v. Convergys Corp.*, No. 104CV0073LJM-WTL, 2006 WL 20777, at *4 (S.D. Ind. Jan. 4, 2006) (holding that the plaintiff's factual infringement inquiry was objectively unreasonable because neither the plaintiff nor its attorneys ever *actually tested* the allegedly infringing product to determine if it met the patent's limitations) (emphasis added). The *Q-Pharma* court held that Rule 11 requires, "*at a minimum*, that an attorney interpret the asserted patent claims and compare the accused [product] with those claims before filing a claim alleging infringement." *Q-Pharma*, 360 F.3d at 1300-01 (emphasis added). As the *Centillon* court noted, the Federal Circuit recognized in *Q-Pharma* that "[w]hether the patent holder must obtain the product an[d] analyze it . . . depends on the circumstances surrounding the pre-filing infringement analysis." *Centillon*, 2006 WL 20777, at *3.

Hearthware's argument is somewhat of a red herring, however, because it freely admits that it tested Morningware's oven. It has also produced documentation regarding the testing. Additionally, Hearthware's attorneys have represented that such testing was a part of their pre-filing infringement analysis, and Hearthware offered two witnesses to testify about such testing. Hearthware initially agreed to allow Mr. Kim to testify about the testing, but it later revoked that offer based on privilege. (Hearthware Resp. at 3 (citing Hearthware's supplemental response to Morningware's interrogatory number 5).) Therefore, Hearthware fails to meet its burden of showing that Morningware's request to depose Mr. Kim, the employee who performed the test, is improper. *Kodish*, 235 F.R.D. at 450.

## II.  All of Mr. Kim's Testimony Regarding the Pre-Filing Testing is Not Privileged

Hearthware argues that all of Mr. Kim's testimony regarding the pre-filing testing is protected from disclosure under the attorney-client privilege and/or the work product doctrine because Hearthware employees performed such testing at the direction of Hearthware's outside counsel. The Court does not agree.

Based on the parties representations in their briefs, Mr. Kim's potential testimony falls into two distinct categories: 1) testimony about the testing he conducted; and 2) communications with Hearthware's counsel about that testing. As an initial matter, Hearthware does not explain why Mr. Kim's testimony about the testing is subject to privilege, whereas Messrs. Choi and Cha's testimony is not. All three witnesses are Hearthware's non-lawyer employees. The Court sees no reason to treat Mr. Kim's testimony differently than that of Messrs. Choi and Cha.

As to the first category set forth above, i.e., Mr. Kim's testimony about the pre-filing testing he conducted, Hearthware has waived any attorney-client privilege or work production protection. Hearthware admits readily that it proffered Messrs. Choi and Cha to testify about the testing. (Hearthware Resp. at 7.) Hearthware also voluntarily and intentionally produced to Morningware documents that are related to Mr. Kim's testing, as well as a video of the testing itself. (*Id.* at 11.) By voluntarily and intentionally disclosing that information to Morningware, Hearthware waived the privilege as to that testing. *See LG Electronics v. Whirlpool Corp.*, No. 08 C 242, 2009 WL 3294800, at *3 (N.D. Ill. Aug. 24, 2009) ("disclosure to a third party outside the scope of the privilege generally waives the protection of the attorney-client privilege by destroying the confidential nature of the communication") (citing *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. May 8, 2001)).

As to the second category of testimony, i.e., Mr. Kim's communications with Hearthware's counsel about the testing he conducted, Hearthware may be able to assert privilege over some of the testimony. Hearthware's blanket assertion of privilege over all of the communications between Mr. Kim and Hearthware's counsel regarding the testing, however, is inappropriate. *See White*, 950 F.2d at 430 ("The claim of privilege cannot be a

blanket claim; it must be made and sustained on a question-by-question or document-by-document basis."). *Id.* (citation omitted). Moreover, if Hearthware's counsel asserts privilege with respect to testimony regarding a particular communication Mr. Kim may have had with counsel, Morningware's counsel is nevertheless entitled to discover, at a minimum, the date of the communication, the parties to the communication and their respective titles, and the subject matter of the communication. In other words, Morningware's counsel is entitled to know basic information about the communication in order to determine whether it is indeed privileged. *Cf. Miyana Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008) ("A privilege log must identify the following information for each separate document: the date; the author and recipients, including their capacities; the subject matter of the document; the purpose for its production; and a specific explanation of why it is privileged.") (citation omitted).

## CONCLUSION

For the reasons stated above, the Court grants Morningware's motion to compel Mr. Kim's deposition. Morningware shall depose Mr. Kim on or before October 21, 2011. The Court grants Morningware's request for attorneys' fees incurred in connection with its motion and denies Morningware's request for costs related to taking Messrs. Choi, Cha, and Kim's deposition. Morningware is directed to file its attorneys' fees petition by no later than October 21, 2011. The Court denies Hearthware's request for attorneys' fees.