# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4348 | **DATE** | 10/6/2011 |
| **CASE TITLE** | Morningware, Inc vs. Hearthware Home Products, Inc. | | |

**DOCKET ENTRY TEXT**

The Court grants Morningware's Motion to Compel Hearthware's Production of Documents Relating to SKE [200], but denies its request for attorneys' fees. Specifically, the Court orders Hearthware to send written correspondence by October 10, 2011, with a copy to Morningware's counsel, to SKE's successor granting permission to produce the documents at issue directly to Morningware instead of Hearthware. The Court further directs Morningware to provide a complete copy to Hearthware of all of the documents it receives from SKE within three business days of receipt. To the extent it has not already done so, Hearthware must produce any documents in its possession that are responsive to Morningware's document requests relating to SKE.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Morningware's motion to compel Hearthware's Production of Documents relating to SKE. For the following reasons, the Court grants Morningware's motion to compel and denies its request for attorneys' fees.

### BACKGROUND

On July 20, 2009, Plaintiff Morningware, Inc. ("Morningware"), filed its Complaint against Hearthware Home Products, Inc. ("Hearthware"), alleging that Hearthware had commercially disparaged Morningware's goods, had committed the common-law tort of unfair competition, and had violated the Deceptive Trade Practices Act of Illinois, as well as the unfair competition and product-disparagement provisions of the Lanham Act. (R. 1, Complaint.) Separately, Hearthware brought an action against Morningware alleging that Morningware's use and sale of the Halogen Convection Oven Model H0-1200 infringed Hearthware's U.S. Patent No. 6,201,217 ("the '217 patent"). (*IBC-Hearthware, Inc. v. Morningware, Inc*., No. 09-CV-4903 (N.D. Ill.) (R. 1).) The Court consolidated both cases on August 26, 2009. (*Id*., R. 19.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Morningware served document requests on Hearthware, seeking documents relating to communications

and agreements with SKE. (R. 200-2, Hearthware's Objs. and Resps. to Morningware's First RFP.) SKE, a Korean corporation, manufactured countertop ovens for Hearthware for sale in North America. (R. 200, Hearthware's Mot. at 2-3; R. 200-1, Supply Agreement at 1.) Unsatisfied with what Hearthware produced in response to that request, Morningware attempted to obtain additional information from SKE "informally." (Hearthware's Mot. at 3.) SKE thereafter told Morningware that it was ready to forward all documents regarding its relationship with Hearthware. (*Id.*) In an October 22, 2009 letter, Morningware's counsel notified Hearthware's counsel that SKE was ready to produce documents pending Hearthware's approval, which Morningware requested. (*Id.*; R. 200-3, Oct. 22, 2009 letter from Nicolas Lee to David Farnum.) Hearthware's counsel responded the next day, stating that he was "deeply concerned" by Morningware's statements that SKE has documents that Morningware believes are responsive and that Hearthware must approve the release of such documents. (R. 200-4, Oct. 23, 2009 letter from Mr. Farnum to Mr. Lee and Edward Bishop.) He further stated that he was in the process of investigating "whether SKE's continued possession of Hearthware's confidential information and apparent disclosure to Morningware and you is in violation of its agreements with Hearthware." *Id.*

On November 13, 2009, SKE wrote to Morningware's counsel, stating that it could not provide the requested documents because of a contractual obligation with Hearthware.[1] (Morningware's Mot. at 3; R. 200-6, Nov. 13, 2009 letter from SKE to Morningware.) Hearthware subsequently changed counsel, and on January 13, 2010, Morningware renewed its request that Hearthware approve SKE's release of the responsive documents. (Morningware Mot. at 3; R. 200-7, January 13, 2010 letter from Mr. Lee to Lewis T. Steadman, Jr.; R. 200-8, Jan. 20, 2010 letter from Mr. Lee to Andrew S. Dallmann.) In a subsequent letter, Hearthware's counsel confirmed that it would attempt to obtain and review SKE's documents for responsiveness by February 22, 2010, and it expected SKE to produce responsive documents shortly thereafter. (R. 200-9, Feb. 22, 2010 letter from Mr. Dallman to Messrs. Bishop and Lee.) Thereafter, Hearthware's counsel sent a letter to SKE instructing SKE not to produce documents directly to Morningware and to instead produce them to Hearthware. (R. 200-10, Feb. 25, 2010 letter from Mr. Steadman to Brian Koo.) The letter also stated that Morningware's counsel agreed that Hearthware's counsel could review the documents to determine whether they relate to this lawsuit. *Id.* Morningware denies that it entered into such an agreement. (Morningware Mot. at 4.)

On March 4, 2010, Morningware served a document subpoena on Cuckoo Co. Ltd, SKE's successor, requesting documents relating to Hearthware and the Convection Oven SCO-1200, Eugene Song, and IMEX Corporation.[2] (*Id.*) On March 12, 2010, after a meet and confer with Hearthware's counsel, Morningware's counsel sent yet another letter to Hearthware's counsel regarding SKE documents. (R. 200-11, Mar. 12, 2010 letter from Mr. Lee to Mr. Dallman.) Morningware's counsel took issue with what it perceived as Hearthware's interference with Morningware's ability to obtain responsive documents from SKE, as well as Hearthware's counsel's representation to SKE that Morningware had agreed to allow Hearthware to review the documents prior to SKE producing them to Morningware. (*Id.*)

---

[1] The Supply Agreement between SKE and Hearthware contains a confidentiality provision, in which SKE agreed that "during and after the termination or expiration of This Agreement, [it] will not disclose to anyone in any matter whatsoever, any [confidential information Hearthware delivered to it] including without limitation, information relating to the PRODUCT [defined in Section 3 of the agreement as the "household electric cooking oven developed by [Hearthware]"]. . . ." (Supply Agreement §§ 3, 14.)

[2] Morningware did not provide the Court with a copy of the subpoena, and therefore the Court cannot discern precisely which documents the subpoena seeks.

To date, SKE has not produced any documents responsive to Morningware's subpoena. (Morningware Mot. at 4.)

**LEGAL STANDARD**

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("the scope of discovery should be broad in order to aid in the search for truth"). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450. In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dep't*, 535 F.2d 621, 629 (7th Cir. 2008).

**ANALYSIS**

Hearthware argues that it has complied with Morningware's requests by asking SKE to produce responsive documents to Hearthware and that Morningware's motion to compel production of SKE documents is inappropriate because "Hearthware is not in the 'possession, custody or control' of those documents."[3] (R. 207, Hearthware Resp. at 3-5 (citing Fed.R.Civ.P. 34(a)(1)).) Morningware counters that Hearthware is in control of SKE's documents as evidenced by its request to SKE to produce the documents to Hearthware for review before producing the documents to Morningware. (R. 210, Morningware's Reply at 2.)

Hearthware states in its response brief that it never received documents from SKE. (Hearthware's Resp. at 4.) Therefore, the SKE documents are not in Hearthware's custody. It is possible that least some of the SKE documents are, however, within Hearthware's control because Hearthware has the legal right, pursuant to the Supply Agreement, to demand that SKE return to Hearthware documents it provided to SKE. *See* Supply Agreement §§ 3, 14; *United States v. Approximately $7,400 in U.S. Currency*, 274 F.R.D. 646, 647 (E.D. Wis. 2011) ("Federal courts have consistently held that documents are deemed to be within the possession, custody or control for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand.") (citations and internal quotation marks omitted); *see also Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1994 WL 383983, at *4 (N.D. Ill. July 20, 1994) and *Preservation Prods., LLC v. Nutraceutical Clinical Labs. Int'l*, 214 F.R.D. 494, 495 (N.D. Ill. 2003). As to documents in SKE's possession that Hearthware did not provide to SKE, it does not appear that Hearthware has a legal right to demand SKE to return such documents. Moreover, the Court cannot order SKE or its successor to comply with the subpoena since SKE is a Korean company that does not, based on the information before the Court, have an office in the Northern District of Illinois. *See* Fed.R.Civ.P. 45(a)(2)(C). It appears from the parties' briefs, however, that SKE has agreed to produce responsive documents in any event.

---

[3] Hearthware asks the Court to order the deposition of Mr. Lee, one of Morningware's attorneys. (Hearthware's Resp. at 6.) Despite a careful review of Hearthware's argument, the Court cannot discern why Hearthware needs to take Mr. Lee's deposition or how taking his deposition relates in any way to Morningware's motion. The Court denies Hearthware's request.

Hearthware does not dispute that SKE should produce the documents. The real dispute between the parties is whether Hearthware must withdraw its instruction to SKE to produce the documents to Hearthware, instead of Morningware, in order to allow Hearthware to review the documents for confidentiality before producing them to Morningware.

Hearthware's stated concern with SKE producing the documents directly to Morningware is its inability to review the documents for confidentiality concerns and the possibility that SKE will produce documents that are unrelated to this lawsuit. The fact that a responsive document may be confidential (pursuant to the terms of the Supply Agreement or otherwise) does not mean that those documents are exempt from disclosure. The Court has entered a protective order in this case, which governs the treatment of the parties' confidential documents. (R. 52.) Morningware has indicated that it will agree to classify initially all of SKE's documents as "Highly Confidential" under that protective order. (Morningware's Reply at 2.) Morningware further represents that, if necessary, it will request at a later time that the documents be re-classified to a lower confidentiality designation using the procedure in the protective order. (*Id*.) Morningware also states that it will provide a copy to Hearthware of all SKE documents it receives from SKE. Those representations appropriately address Hearthware's confidentiality concerns. The possibility that SKE may produce documents unrelated to this case to Morningware does not necessitate Hearthware's pre-review of third party documents. Hearthware's concern is not unique in the context of third party discovery. Moreover, Morningware's agreement to treat all of SKE's documents as "highly confidential" under the protective order resolves any concerns about potential misuse of those documents.[4]

## CONCLUSION

For the reasons stated above, the Court grants Morningware's motion to compel, but denies its request for attorneys' fees. Specifically, the Court orders Hearthware to send written correspondence by October 10, 2011, with a copy to Morningware's counsel, to SKE's successor granting permission to produce the documents at issue directly to Morningware instead of Hearthware. The Court further directs Morningware to provide a complete copy to Hearthware of all of the documents it receives from SKE within three business days of receipt. To the extent it has not already done so, Hearthware must produce any additional documents in its possession that are responsive to Morningware's document requests relating to SKE.

---

[4] Additionally, Morningware states in its reply that SKE ceased manufacturing ovens for Morningware "years before Morningware subpoenaed SKE or sought its documents." (Morningware's Reply at 3.) Morningware, however, supplies no factual citation for this statement. If true, however, that fact mitigates against Hearthware's concern.