UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Morningware, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Hearthware Home Products, Inc. | ) | Case No. 09-4348 |
| | ) | |
| Defendant. | ) | Judge: Amy J. St. Eve |
| ------------------------------------------------- | ) | |
| | ) | |
| IBC-Hearthware, Inc. | ) | |
| d/b/a Hearthware Home | ) | |
| Products, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | Consolidated |
| | ) | |
| | ) | |
| Morningware, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO EXCLUDE VANDERHART REBUTTAL REPORT
## AND DOCUMENTS PRODUCED AFTER THE CLOSE OF DISCOVERY

Plaintiff/Counterdefendant Morningware Electronics, Inc. (Morningware) hereby moves the Court for an Order striking and excluding from evidence the purported Rebuttal Report of Jennifer Vanderhart, Ph.D (Exhibit A). The Rebuttal Report, offered by Defendant/Counterplaintiff Hearthware Home Products, Inc. (Hearthware), improperly attempts to supplement her earlier Report (Exhibit B) to include opinions on damage issues pertaining to Morningware's Lanham Act and related claims. As shown below, Dr. Vanderhart's initial Report offered no opinions on Morningware's damage claims, and as Dr. Vanderhart herself acknowledged, Morningware submitted no expert report on its damages for her to rebut. Thus,

Dr. Vanderhart's "Rebuttal" Report is merely an improper attempt to supplement her initial Report, and she should be precluded from testifying with respect to any opinions offered therein.

Additionally, Hearthware submitted Dr. Vanderhart's Rebuttal Report in opposition to Morningware's Motion For Summary Judgment On Counts I Through V Of Its First Amended Complaint (Dkt. No. 295). The Rebuttal Report should be stricken, and the Court should not consider it in connection with Morningware's Summary Judgment Motion.

Furthermore, Dr. Vanderhart relied only on documents created and produced after discovery closed to formulate the opinions in her Rebuttal Report. All of the documents produced by Hearthware after the close of discovery upon which Dr. Vanderhart relied should be stricken, as well as any of her opinions based thereon.

**THE VANDERHART "REBUTTAL" REPORT IS NOT**
**A REBUTTAL REPORT AND SHOULD BE EXCLUDED**

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (internal quotation marks and citation omitted). "Testimony offered only as additional support to an argument made in a case in chief, if not offered 'to contradict, impeach or defuse the impact of the evidence offered by an adverse party,' is improper on rebuttal. *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). Under Rule 26(a)(2)(D)(ii), a rebuttal expert may be disclosed after the disclosure of the other party's expert witnesses as long as the rebuttal expert "is intended solely to contradict or rebut evidence on the same subject matter identified by another party."

The Vanderhart Rebuttal Report was served on April 26, 2012.[1] Dr. Vanderhart indicates that her Rebuttal Report is "to offer an expert opinion regarding unjust enrichment damages arising from the use of certain ad words related to trademarks belonging to Morningware, Inc." Dr. Vanderhart purports to calculate Hearthware's profits resulting from its use of Morningware's trademarks as adwords.  However, as Dr. Vanderhart explicitly acknowledged, Morningware did not serve any damages expert report for her to rebut:

> I understand that there was not a formal expert report on damages offered by Morningware with regards to its allegations against Hearthware. Morningware has submitted a memorandum dated March 14, 2012 from Jon Tepp to Edward L. Bishop, the subject of which is "Hearthware NuWave Oven Revenues."

(Vanderhart Rebuttal Report at ¶2). Dr. Vanderhart also recognized during her deposition that Mr. Tepp's memo was not an expert report contemplated under the Federal Rules. (Vanderhart 5/8/12 Dep. at 102, line 22 to 103, line 20, excerpts attached as Exhibit C). Mr. Tepp's memo, attached as Exhibit D, is merely a memo to Morningware's counsel tallying revenues, and produced to Hearthware as part of a supplemental document production. The Vanderhart "Rebuttal" Report is not in rebuttal to any Report submitted by Morningware because Morningware submitted none. The Report, therefore, cannot be "intended solely to contradict or

---

[1] By the Court's February 27, 2012 Order (Dkt. No. 275), the parties were to exchange initial expert reports on March 15, 2012.  Morningware produced its initial reports and the Tepp Memo (Exhibit D) to Hearthware on that date.  Although due March 15, 2012, Hearthware did not serve Dr. Vanderhart's initial Report until the wee hours of March 16, 2012. A strong inference can be made that Dr. Vanderhart's Report was delayed once realizing, after seeing Mr. Tepp's memo, that her Report initially failed to include any opinions regarding its own Lanham Act claims, let alone Morningware's. Dr. Vanderhart's Report states in ¶ 1 that she was engaged to "offer an expert opinion regarding damages arising from the alleged infringement of Patent No. 6,201,217, Countertop Electric Cooker (the '217 Patent), by Morningware, Inc." It says nothing about offering any opinion on either Hearthware's or Morningware's Lanham Act claims. Moreover, Dr. Vanderhart's initial report only contains a single paragraph VII entitled "Damages Analysis for Lanham Act Claims" in which the only opinion given is that Morningware's sales of its oven through April 2010 is $898,177 and is relevant to Hearthware's own Lanham Act claim for Morningware's profits.

3

rebut evidence on the same subject matter identified by another party" as Fed. R. Civ. P. 26 requires.

Hearthware knew that Morningware asserted damages and sought profits on its Lanham Act claims when Hearthware initially identified Dr. Vanderhart as their damages expert, and submitted her initial Report on March 15, 2012. Yet, Dr. Vanderhart's initial Report contained no opinion regarding Morningware's Lanham Act claims. Hearthware cannot possibly claim that it was surprised that Morningware could seek Hearthware's profits from sales of its oven with respect to Morningware's Lanham Act claims. As Dr. Vanderhart stated in her initial Report, "I understand that monetary relief under the Lanham Act allows for the Plaintiff to be awarded, among other possibilities, an amount equal to the defendant's profits. I also understand that the plaintiff has the burden to show the defendant's infringing sales, and then the burden shifts to the defendant to show costs and to apportion the sales." Thus, Hearthware and Dr. Vanderhart had to know that its profits were an issue when Hearthware submitted her initial Report on March 15, 2012. Dr. Vanderhart's Rebuttal Report is not a rebuttal report at all, but merely an attempt to supplement her earlier Report with opinions that could have and should have been presented in her earlier Report. As such, the Rebuttal Report should be stricken from evidence, Dr. Vanderhart should be precluded from testifying with respect to any opinions offered therein, and the Court should not consider it in connection with Morningware's summary judgment motion.

In *Sports Arena Mgmt., Inc. v. K&K Insurance Group, Inc.*, No. 06 C 6290, 2008 WL 4877452 at *2 (N.D. Ill. June 26, 2008) (Exhibit E), the court barred the testimony of an expert purportedly offered to rebut. The court reasoned that because the party offering the expert testimony knew the defendant would attack proximate cause by arguing the requested coverage

4

was unavailable, the expert was not a rebuttal expert. *Id*. Thus, "regardless of what plaintiffs call him, [the expert] is not a rebuttal expert." *Id*. The court struck and barred the purported rebuttal testimony. The Court should likewise strike and exclude Dr. Vanderhart's Rebuttal Report, and preclude her from testifying with respect thereto.

**DR. VANDERHART'S REBUTTAL REPORT RELIES
ON DOCUMENTS AND FACTS NOT PRODUCED
DURING DISCOVERY, AND THE DOCUMENTS, REPORT,
AND THE OPINIONS BASED THEREON SHOULD BE EXCLUDED**

During discovery, and thereafter as stipulated by the parties, Morningware repeatedly asked for Hearthware's sales and revenue information. This is exemplified in a February 9, 2012 email from Morningware's counsel to Hearthware's counsel (Exhibit F) in which Morningware's counsel requested the following information:

> In reviewing Hearthware's production, we have a few questions. Namely:
> 1)    What products are associated with the quantities/revenues shown in IBC-H021560 and IBC-H021550?
> 2)    IBC-H000623-717 appear to be only for retail sales. Does Hearthware have corresponding Internet/Infomercial data? Also, are the 2008/09 revenue numbers only for the Nu Wave Oven? And can be get some breakdown of units for other products on IBC-H000631?
> 3)    For IBC-H000719, is this data for all Nu Wave Oven sales? Infomercial only? We ask because this data does not correspond to the retail data provided in IBC-H000623-717.
> 4)    For IBC-H003018-442, can we get this data in Excel? Also, can we get the "Num" or "Item" for the Nu Wave Ovens?
> Please let me know when we can expect an answer to the above questions.

Despite repeated requests, Hearthware would not produce this information even though it was obligated to do so.

Attached as Exhibit G is a spreadsheet of all documents created and produced by Hearthware well after fact discovery closed. These include documents upon which Dr. Vanderhart and Hearthware's other experts relied, but yet Morningware was deprived of seeing until after the release of Hearthware's expert reports, and only when Morningware again

5

requested production of the documents. The documents are exemplified in Exhibit 5 to Dr. Vanderhart's deposition (Exhibit H hereto), and in the April 26, 2012 email from Kristina Kim, forwarded to Dr. Vanderhart (Exhibit I hereto), and referenced in Exhibit B to the Rebuttal Report. Moreover, Dr. Vanderhart testified that she relied on Hearthware's employees for the accuracy of the information provided in the documents, and assumed it was correct. (Vanderhart 5/8/12 Dep. at 114, line 3 to 120, line 12; at 127, line 15 to 130, line 11, Exhibit C hereto).

Because the sales figures were available to Hearthware, but not produced until Dr. Vanderhart needed them after discovery closed, Morningware was not able during discovery to ascertain how Dr. Vanderhart or Hearthware came up with these figures, their accuracy, or to have an expert of its own choosing review and express an opinion using this information. The same is true of the other documents not produced during discovery. An expert cannot be a mere mouthpiece for Defendant, spouting information the client wants to get in that was not, but should have been, produced during discovery. *See, Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808-10 (N.D. Ill. 2005) (expert opinion stricken where expert would be acting as mouthpiece for employees). The documents Hearthware created and produced after discovery should be stricken, and Hearthware and its experts should be precluded from relying on or testifying with respect to such documents.

## **CONCLUSION**

For the foregoing reasons, Morningware requests the Court strike Dr. Vanderhart's Rebuttal Report and preclude her from testifying with respect thereto. The Court should also not consider Dr. Vanderhart's Rebuttal Report in connection with Morningware's summary judgment motion. Additionally, Morningware requests the Court exclude documents created and

produced after discovery closed, and preclude Hearthware and Dr. Vanderhart from offering or testifying with respect to any opinions based thereon.

DATED: June 13, 2012	Submitted by,

/s/Nicholas S. Lee_____
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
Monique A. Morneault
mmorneault@bishopptents.com
BISHOP & DIEHL, LTD.
1750 East Golf Road
Schaumburg, IL 60173
Phone: (847) 969-9123
Fax: (847) 969-9124

*Attorneys for Plaintiff/Counterdefendant Morningware, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system June 13, 2012. Any other counsel of record will be served by electronic mail and/or first class mail.

_____/s/Nicholas S. Lee_____