UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Morningware, Inc.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 09-4348** |
| | ) | |
| **Hearthware Home Products, Inc.** | ) | **Judge: Amy J. St. Eve** |
| **Defendant.** | ) | |
| ------------------------------------------------- | ) | |
| | ) | |
| **IBC-Hearthware, Inc.** | ) | |
| **d/b/a Hearthware Home Products, Inc.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Consolidated** |
| v. | ) | |
| | ) | |
| **Morningware, Inc.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**HEARTHWARE'S OPPOSITION TO MORNINGWARE'S
MOTION TO STRIKE AND EXCLUDE THE REBUTTAL REPORT AND
DOCUMENTS OF VANDERHART; AND
CROSS-MOTION TO EXCLUDE THE REPORT OF TEPP, AND
<u>PRECLUDE TEPP AND MEITZEN FROM TESTIFYING AS EXPERTS</u>**

NOW COMES Defendant Hearthware Home Products, Inc. ("Hearthware") and respectfully submits this Memorandum in Opposition to Plaintiff Morningware, Inc.'s ("Morningware") Motion to strike and exclude the rebuttal report and documents of Hearthware's expert Dr. Jennifer Vanderhart. Hearthware also respectfully submits its Cross-Motion to exclude the report offered by Mr. Jon Tepp concerning revenues (Dkt. No. 309-4), as well as preclude Messrs. Tepp and Mark Meitzen from testifying on behalf of Morningware.

**I.     <u>Hearthware's Opposition - Background and Analysis</u>**

Hearthware respectfully respects this honorable Court's indulgence, as it attempts to understand Morningware's alleged basis to strike the rebuttal report of Hearthware's damages expert Dr. Jennifer Vanderhart, and why it brought this motion in the first place.

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides in relevant part that a plaintiff who has proved infringement of a registered mark "shall be entitled, ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *See also General Elec. Co. v. Speicher*, 877 F.2d 531, 535 (7th Cir.1989). "Although this section applies in terms only to the infringement of registered marks," the 7th Circuit has also held it "applicable to the infringement of unregistered marks challenged under 15 U.S.C. § 1125." *General Elec.*, 877 F.2d at 535 (*citing Nupulse, Inc. v. Schlueter Co.*, 853 F.2d 545 (7th Cir.1988)).

Accordingly, defendants profits or its damages "are available under the Lanham Act to redress trademark infringement, see 15 U.S.C. § 1117(a), and they are distinct remedies with different legal standards and burdens of proof." *WMS Gaming Inc. v. WPC Production Ltd.*, 542 F. 3d 601, 605 (7th Cir. 2008).

However, as trademark owner, Morningware is *not* entitled to recover all of Defendant Hearthware's profits; instead, however, a trademark owner may seek to recover only those profits of the infringement *that are attributable to the infringement itself. Hamilton-Brown Show Co. v. Wolf Brothers & Co.*, 240 U.S. 251, 261-262 (1916); *Mishawaka Rubber & Woolen Manufac. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942) (emphases added).

In establishing its alleged lost profits case, however, the law provides the plaintiff some leniency with regard to the burden of proof. In particular, Section 35(a) further provides that "'[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant

2

must prove all elements of cost or deduction claimed.' 15 U.S.C. § 1117(a)." *Harley-Davidson, Inc. v. Selectra Int'l Designs, Ltd.*, 855 F. Supp. 275, 279 (E.D. Wis. 1994). *See, e.g., Hamilton-Brown Show*, 240 U.S. at 261-262 (1916).

In the present case, it is clear that Morningware seeks Defendant Hearthware's profits. Its alleged expert Mr. Tepp has provided a two page summary report that does nothing more than tally the revenues for the Hearthware oven. (Dkt. No. 309-4).

Accordingly, upon reviewed Mr. Tepp's summary, Hearthware sought Dr. Vanderhart's expertise to meet its obligation to present evidence of costs or what elements of gross sales were not attributable to the use of plaintiff's mark. *WMS Gaming*, 542 F. 3d at 608-09. Dr. Vanderhart's rebuttal report, rebutting Mr. Tepp's report, was prepared and submitted to Morningware's counsel on April 26, 2012 (Dkt. No. 309-2), and she was deposed regarding the rebuttal report on May 8, 2012.

For additional clarification, Dr. Vanderhart's initial burden of proof report had been prepared and submitted on March 15, 2012, and she was deposed in relation to the initial burden of proof report on April 17, 2012. As easily seen, this initial report was directed at damages concerning the '217 Patent for which Hearthware has the initial burden of proof. (Dkt. No. 309-1, no. 9).

Exactly what Hearthware did wrong in having Dr. Vanderhart prepare her rebuttal report in relation to Mr. Tepp's report remains a mystery, as are Morningware's allegations of prejudice. As noted, Hearthware bore the obligation of presenting evidence of cost and gross sales not attributable the use of Morningware's mark. *WMS Gaming*, 542 F. 3d at 608-09. In fact, the penalties for having done so can be quite severe. The 7th Circuit has held that "when a trademark plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory

burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales." *Id.*, at 609. (*citing* , e.g., *Tex. Tech. v. Spiegelberg*, 461 F. Supp. 2d 510, 526 (N.D.Tex.2006); *N.Y. Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996)).

Morningware appears to argue that Dr. Vanderhart's report should have included Hearthware's damages but failed to do so, and further that she knew her initial report was deficient. Then it cleverly argues that it was improper for Dr. Vanderhart to produce a rebuttal report, because Mr. Tepp's report was so sparse that it was really no report at all. Morningware goes so far as to quote Dr. Vanderhart's criticism of Mr. Tepp's two pager on Hearthware's oven revenues.

Despite Morningware's attempt to somehow shoehorn its discovery antics into having Dr. Vanderhart's report get discarded, it was incumbent upon Morningware to either establish damages – which it clearly did not – or to offer up Defendant Hearthware's sales, and leave it up to Hearthware to prove the elements of cost and deduction, which it apparently attempted by proffering Mr. Tepp's report. *See, e.g., General Elec.*, 877 F.2d at 535. By attempting to strike Dr. Vanderhart's report, Morningware tries to eat its cake and have it too, *i.e.*, it makes no attempt to work at establishing damages, and when Hearthware rebuts its attempt to prove Hearthware's sales, it tries to have Dr. Vanderhart's work discarded.

In order to bolster its position, Morningware alleges it repeatedly asked for and did not get Hearthware's sales and revenue information. To show this, it cites Morningware's counsel's email to Hearthware's counsel (Exhibit A), and a spreadsheet of documents created and produced by Hearthware allegedly after close of discovery (Dkt. No. 309-7).

4

In relation to Morningware's counsel's email request for sales and revenue data, Morningware does not paint an accurate picture. Upon receiving the email, Hearthware looked into the matter. (Exhibit B). Hearthware attempted to resolve the issue with Morningware under LR 37.2 before it burdened the Court, attempting to help Morningware get its allegedly missing information by providing time with Hearthware's in-house counsel. (Exhibit C, at 2). At the same time, Hearthware faced in Morningware extreme reluctance to provide even basic financial data, including information regarding revenues and costs. (Exhibit D). This was prejudicial for Hearthware's, and required great commitments of time as its expert had to sift through a morass of unconnected documents in Morningware's production, seemingly thrown together with no thought that the other side would have to read it. In fact, despite many documents provide to Morningware in native format, Morningware never returned the favor for Hearthware. (Exhibit D at 2, 4).

Despite Morningware's claim of prejudice, Hearthware's in-house counsel in-fact attempted to provide Morningware's counsel the information he was requesting. The only problem Hearthware had was that Morningware's counsel desired Hearthware to characterize the evidence, and this was not the proper venue, as Morningware had had opportunity through interrogatories for this, as well as upcoming opportunities to depose experts. (Exhibit E at 2-3). Hearthware did in fact providing respective files in their native format to Morningware, but never received reciprocation. (Exhibit F at 2).

Morningware also states that Hearthware provide it certain documents only after close of fact discovery, to establish that Morningware was not able to come up with its own figures or establish their accuracy and the like. Again, Morningware's statements are misleading.

Frankly, Morningware's counsel made little mention of deficiencies during Dr. Vanderhart's deposition of April 17, and the few times deficiencies were alleged, Hearthware's counsel made it clear that it would act to immediately supplement its production. (Exhibit I, e.g., at 74, 83).

Furthermore, Morningware should also know better than to make such accusations or check its own emails on this topic, because on the following day, Hearthware's counsel provided a downloadable link bearing the documents to Morningware's counsel (Exhibit G) and another email that bore every conceivable bit of data Morningware alleges it is missing in native format so as not to prejudice Morningware by more than a day (Exhibit H).[1] In fact, these documents featured financial data garnered from Morningware's own production, from which Dr. Vanderhart had to painstakingly create her own documents.

From April 18 to April 26, when Dr. Vanderhart submitted her rebuttal report, to her deposition on May 8, and close of expert discovery on May 10, Morningware had ample opportunity to supplement Mr. Tepp's report or make an attempt to establish its case for damages, but it chose to rest then, and file this motion now. It can hardly blame Hearthware for its own failure. And if Morningware needed additional time, it had but to ask Hearthware for stipulation, for it cannot be said this honorable Court has not been very generous in granting extensions when the parties have requested it.

---

[1] Hearthware's counsel explains: "The only financial information not provided earlier was garnered from Morningware's own production. As the documents produced were done so haphazardly, Dr. Vanderhart had to create her own documents. As a courtesy and in the interest of providing these document to Morningware at earliest opportunity, these documents are enclosed in native format, with our previous requirement (as for all native format production) that they may not be used other than for their respective content, and our statement that the documents have not been reviewed (due to the foregoing time factor) for attorney mental impressions, and Hearthware reserves the right to "claw back" inadvertent disclosures."

## II.     Hearthware's Cross-Motion to Exclude the Report of Tepp, and Preclude Messrs. Tepp and Meitzen from Testifying as Experts

In view of the aforementioned remarks, Morningware respectfully submits that the report of Mr. Tepp should be excluded, and that Messrs. Tepp and Meitzen should be precluded from testifying on behalf of Morningware. As additional support, Hearthware respectfully submits as follows:

(i)     As noted, Morningware itself has argued vociferously that Mr. Tepp's report is not an expert report.

(ii)    In its expert disclosures, Morningware states that Mr. Meitzen is expected to testify regarding damages. (Exhibit J). Mr. Tepp was not mentioned as a testifying expert. In fact, Morningware had sent Hearthware Mr. Meitzen's resume, which had led Hearthware to believe Mr. Meitzen would be a testifying expert. (Exhibit K).

(iii)   When Hearthware's counsel requested Morningware's counsel for the opportunity to depose Mr. Meitzen, Morningware's counsel stated that (a) Mr. Meitzen did not submit and expert report, (b) that he is not a testifying expert and (c) that he will be unavailable for deposition. (Exhibit J). As Hearthware has not been given opportunity to depose Messrs. Tepp or Meitzen, awarding them the opportunity to testify would be highly prejudicial to Hearthware.

(iv)    As this honorable Court is well aware, fact discovery ended long before Mr. Tepp submitted his report, and the gentlemen was never put up as a fact witness in the case. Furthermore, with regard to experts, the Supreme Court requires an inquiry into reliability "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152

7

(1999) (*citing Daubert v. Merrill Dow Pharm.*, 509 U.S. 579 (1993)). The *Daubert* principles have not been applied by Mr. Tepp in his report, nor has Morningware stated that they have been, for Morningware itself does not view Mr. Tepp's report as an expert report.

### III.     Conclusion

For the foregoing reasons, Hearthware respectfully moves the Court to deny Morningware's motion to strike and exclude the rebuttal report and documents of Dr. Jennifer Vanderhart, and cross-moves the Court to exclude the report of Mr. Tepp, and preclude Messrs. Tepp and Meitzen from testifying.

Dated: June 21, 2012                    Respectfully Submitted,


/s/ Cameron H. Tousi
David M. Farnum
Cameron H. Tousi
Ralph P. Albrecht
ALBRECHT TOUSI & FARNUM PLLC
1701 Pennsylvania Avenue, NW, Ste 300
Washington, D.C. 20006
Tel: (202) 349-1490

Lewis T. Steadman, Jr.
Joseph W. Vucko
IBC-Hearthware, Inc.
1795 Butterfield Road
Libertyville, IL 60048
Tel: (847) 596-6709

*Counsel for Defendant and Counterclaimant
 IBC Hearthware, Inc. d/b/a Hearthware
Home Products, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.5 this 21st day of June, 2011. Any other counsel of record will be served by facsimile transmission and/or first class mail.

                                    /s/ Cameron H. Tousi
                                    *Counsel for Defendant and Counterclaimant*
                                    *IBC Hearthware, Inc. d/b/a Hearthware*
                                    *Home Products, Inc.*