**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MORNINGWARE, INC.,            )
                                    )
             Plaintiff,       )
                                    )
             v.                )
                                    )
HEARTHWARE HOME      )      No. 09 C 4348
PRODUCTS, INC.,          )
                                    )
            Defendant.     )
-------------------------------------------------------)
                                    )
IBC-HEARTHWARE, INC.     )
D/B/A HEARTHWARE HOME   )
PRODUCTS, INC.,          )
                                    )
             Plaintiff,       )
                                    )      Consolidated
             v.                )
                                    )
MORNINGWARE, INC.,     )
                                    )
            Defendant.     )

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

On July 20, 2009, Plaintiff Morningware, Inc. ("Morningware"), filed its Complaint

against Hearthware Home Products, Inc. ("Hearthware"), alleging that Hearthware had

commercially disparaged Morningware's goods, had committed the common-law tort of unfair

competition, and had violated the Deceptive Trade Practices Act of Illinois, as well as the unfair-

competition and product-disparagement provisions of the Lanham Act. (R. 1.) Separately,

Hearthware brought an action against Morningware alleging that the latter had infringed U.S.

Patent No. 6,201,217 ("the '217 Patent"). (*IBC-Hearthware, Inc. v. Morningware, Inc.*, No. 09-

CV-4903 (N.D. Ill.) (R. 1).)  The Court consolidated both cases on August 26, 2009.  (*Id.* (R. 19).)

Since that time, both parties have amended their pleadings to assert additional claims and counterclaims against one another.  Several of Hearthware's counterclaims are at issue in the pending motion.  Hearthware has asserted the following counterclaims: infringement of the '217 Patent (Count I); trade dress infringement under the Lanham Act (Count II)[1]; violation of the Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") (Count III); common law unfair competition (Count IV); false representations under the Lanham Act (Count V); false advertising under the Lanham Act (Count VI); common law misappropriation (Count VII); and violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act (the "Illinois Consumer Fraud Act") (Count VIII).  (R. 107.)  Before the Court is Morningware's motion for summary judgment on Counts III and V-VIII.  For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

"For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).  Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and

---

[1] On November 18, 2010, the Court granted Hearthware's voluntary motion to dismiss Counts II and IV with prejudice.  (R. 149 )

demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) response, but must rely on the nonmovant's Local Rule 56.1(b)(3)(C) statement of additional facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). The Court disregards Rule 56.1 statements and responses that do not cite to specific portions of the record, as well as those that contain factual or legal argument. *See Cracco*, 559 F.3d at 632 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"); *Bordelon*, 233 F.3d at 528 (the requirements for

responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted"); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

## II.     The Parties Failed to Comply with Local Rule 56.1

As was the case with Morningware's motion for summary judgment on Counts I-V of its First Amended Complaint,[2] both parties' Local Rule 56.1 statements contain significant problems.  Several of Morningware's "statements of material facts" are either unsupported by any citation to the evidence or they are not statements of fact at all, but rather legal argument or legal conclusions.  (*See, e.g.*, R. 302, Morningware's Statement of Undisputed Facts Pursuant to Local Rule 56.1(a)(3) In Support of Its Motion for Summary Judgment on the Third and Fifth through Eighth Claims for Relief of Hearthware's First Amended Counterclaims ("Morningware's SOF") ¶¶ 10-13, 15, 17, 19, 21-23, 25-30, 35-37.)

In addition, most of Hearthware's Local Rule 56.1(b)(3)(C) additional statements of material fact fail to comply with the local rules because they contain improper argument and legal conclusions, and most do not contain citations to evidence in support of the asserted statements.  (*See, e.g.*, R. 346, Hearthware's Local Rule 56.1 Statement of Additional Material Facts That Require Denial of Morningware's Motion for Summary Judgment on Counterclaims III, V-VIII ("Hearthware's Add'l SOF") ¶¶ 7-23.)  As explained above, the purpose of Local

---

[2]  *See Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09-cv-4348, 2012 WL 3721350, at *2-3 (N.D. Ill. Aug. 27, 2012).

4

Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady*, 467 F.3d at 1060; *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."). As such, the Court will not deem these "facts" as true.

It appears that the parties simply cut and pasted portions of their briefs into their Rule 56.1 statements of fact and responses thereto. This is not only impermissible, it also does not assist the Court in deciding the motions. *See Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is to make it easy for the court to rule in his client's favor . . . ."). Counsel's failure to comply with Rule 56.1 results in the very brief explanation of undisputed material facts below.

## RELEVANT FACTS

Hearthware is a corporation organized under Illinois law, with its principal place of business at 1795 North Butterfield Road, Libertyville, Illinois. (Hearthware's Addt'l SOF ¶ 2.) Morningware is a corporation organized under Illinois law, with its principal place of business at 1699 Wall Street, Mount Prospect, Illinois. (*Id.* ¶ 3.) The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(b), and 1367(a). (*Id.* ¶ 4.) Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). (*Id.* ¶ 6.)

The design of Morningware's HO-1200 Oven ("Morningware's Oven") has not changed since 2003. (Morningware's SOF ¶ 8.) The instruction manual and recipe book for Morningware's Oven states that "[u]nless a user sets a specific cooking temperature, the . . . Oven automatically cooks food at the highest temperature of 400° F. (*Id.* ¶ 16.)

5

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc*., 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

Morningware has moved for summary judgment on Count III and Counts V-VIII of Hearthware's Counterclaims.

**I.      The Court Denies Morningware's Motion for Summary Judgment as to Counts V and VI - False Representations and False Advertising Under the Lanham Act**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), provides that

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> ...
> (B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §§ 1125(a)(1)(B).  To succeed on this claim, Hearthware must prove "'(1) a false statement of fact by [Morningware] in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) [Morningware] caused its false statement to enter interstate commerce; and (5) [Hearthware] has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to [Morningware] or by a loss of goodwill associated with its products.'"  *Morningware, Inc. v. Hearthware Home Prods., Inc*., 673 F. Supp. 2d 630, 638 (N.D. Ill. 2009) (quoting *Hot Wax, Inc. v. Turtle Wax, Inc*., 191 F.3d 813, 819-20 (7th Cir. 1999)).  "In addition, to recover money damages under the Act, [Hearthware] must prove both actual damages and a causal link between [Morningware's] violation and those damages."  *Hot Wax*, 191 F.3d at 819-20.

A false statement establishing liability under the Lanham Act "generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive customers."  *Hot Wax*, 191 F.3d at 820; *see also LG*

7

*Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 948 (N.D. Ill. 2009). If the statement is literally false, "the plaintiff need not show that the statement either actually deceived customers or was likely to do so." *Hot Wax*, 191 F.3d at 820. When a statement is literally true or ambiguous, "the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion." *Id.* Regardless of whether the theory is one of literal or implied falsity, "'whether a claim is either 'false' or 'misleading' is an issue of fact rather than law.'" *LG Elecs.*, 661 F. Supp. 2d at 948 (quoting *Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1034 (7th Cir. 2000)). Additionally, whether consumers are likely to be confused is a question of fact that courts may resolve on summary judgment "only 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *Id.* (quoting *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008)). "'It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive.'" *Id.* (quoting *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297-98 (2d Cir. 1992)).

Hearthware asserts that Morningware has made three different false or misleading statements:

1. Morningware's Oven is affixed with a "UL" symbol, indicating that it has been approved by Underwriters Laboratories ("UL") (the "UL Representation");

2. Unless a user sets a specific cooking temperature, Morningware's Oven automatically cooks at 400 degrees Fahrenheit ("the Temperature Representation"); and

3. Morningware's Oven saves up to 85% of the energy used by a conventional oven and cooks 50% faster than a conventional oven (the "Energy Representation").

(Hearthware's Counterclaim ¶¶ 45-47.) The Court analyzes these three representations separately below.

### A.     The UL Representation

Morningware argues that because its oven complies with UL's standards, the UL Representation is literally true. In support, Morningware relies on a 2003 "UL Report" of purported testing on Morningware's Oven. (*See* R. 301, Morningware's Motion for Summary Judgment ("Morningware's Mot.") at 4.) It submits that the UL Report conclusively demonstrates that Morningware's Oven performs within all prescribed UL limits. (*Id.*) Further, Morningware relies on an the Declaration of Susan Sul, Morningware's sole employee, in arguing that the design of Morningware's Oven has not changed since 2003. (*Id.* at 5.) Finally, Morningware relies on a summary of invoices from UL, which it asserts demonstrate that UL's follow-up inspections of "Morningware's design and manufacture" verify that its oven is "still being made in accord with the UL listing." (*Id.*)

Morningware has not met its burden of proving that no disputed issues of material fact exist. As noted above, Hearthware admits that the design of Morningware's Oven has not changed since 2003. That, however, is where the parties' agreement on the facts ends. Additionally, several problems exist with Morningware's reliance on the UL Report. The UL Report is hearsay, and it is unauthenticated. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.") (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003)); *see also Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)

(stating that the court may consider "properly authenticated and admissible documents or exhibits" in summary judgment proceedings). Moreover, as Hearthware points out, it is unclear from the UL Report which entity performed the testing. Hearthware submits that YuengJin International, and not UL, performed the testing. The Court simply cannot tell from the face of the document which entity performed the testing, and Morningware provides no witness testimony on this issue.

Morningware's reliance on the summary of invoices from UL is even more problematic. First, Hearthware asserts, and Morningware does not dispute, that Morningware did not produce the summary (or the email to which the summary was attached) to Hearthware during discovery. As such, Morningware may not use that evidence in support of its motion for summary judgment. *See* Fed. R. Civ. P. 37(c) ("[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Second, Morningware does not attach the actual invoices, but rather only a summary of them, and it has not met its burden of showing that the summary or the invoices are admissible evidence. *See United States v. Benabe*, 436 Fed. App'x 639, 650 (7th Cir. 2011) (explaining that although Federal Rule of Evidence 1006 provides that a party may, under certain circumstances, present the contents of voluminous writings in summary form, "the rule is not an end-run around the other rules of admissibility . . . . The underlying records must be accurate and otherwise admissible as evidence for Rule 1006 to apply . . . .") (citing *United States v. Oros*, 578 F.3d 703, 708 (7th Cir. 2009)). Indeed, the summary is hearsay and is not authenticated. Ms. Sul, who does not appear to be an employee or otherwise

affiliated with UL, cannot authenticate UL's documents and does not appear to have personal knowledge of UL's inspections. *Cf. Article II Gun Shop*, 441 F.3d at 495-96 (the district court properly considered an inspection report on summary judgment where agent of entity that created the report provided a sworn affidavit authenticating the report and providing facts to support exception to the hearsay rule). Finally, even if the summary was admissible, it does not show what work UL performed, and, contrary to Morningware's assertion, it does not provide evidence that UL has performed follow-up inspections of the design and manufacture of Morningware's Oven.

Because Morningware, as the moving party, has not met its initial burden of establishing that no genuine disputes of material fact exist, the Court denies its motion for summary judgment as to the UL Representation. *See Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (stating that the "party moving for summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact") (internal quotation marks, citation and alterations omitted); *Manuele v. City of Springfield*, 718 F. Supp. 2d 939, 946 (C.D. Ill. 2010) (holding that the movant's "bare-bones, undeveloped argument does not sustain [its] initial burden of demonstrating that there is no genuine issue of material fact for trial"); *Mombourquette ex rel. Mombourquette v. Amundson*, 469 F. Supp. 2d 624, 654 (W.D. Wis. 2007) (holding that movant failed to carry initial burden, where movant's argument was too narrow and undeveloped).

11

## B.     The Temperature Representation

In its Counterclaims, Hearthware alleges that Morningware's representation in its instruction manual that unless a user sets a specific cooking temperature, Morningware's Oven automatically cooks at 400 degrees Fahrenheit is false.  Specifically, Hearthware contends that the statement is false because Morningware's Oven "does not and cannot reach a temperature of 400 Degrees Fahrenheit."  (Hearthware's Counterclaims ¶ 45.)  In its motion, Morningware argues that it has not misrepresented that "its oven is able to reach a temperature of 400 degrees Fahrenheit" in its instruction manual because the manual actual states that "[u]nless a user sets a specific cooking temperature, the Halogen Oven automatically cooks food at the highest temperature of 400° F."  (Morningware's Mot. at 5.)  According to Morningware, the statement in its instruction manual is literally true because "says nothing about the actual temperature of the interior of the oven."  (*Id*. at 6.)

Morningware is not entitled to summary judgment on this claim.  As the Court explained above, regardless of whether the plaintiff asserts a literal or implied falsity theory, "'whether a claim is either 'false' or 'misleading' is an issue of fact rather than law.'"  *LG Elecs*., 661 F. Supp. 2d at 948 (quoting *Mead Johnson & Co.*, 209 F.3d at 1034).  "It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive."  *Id.* (quoting *Johnson & Johnson * Merck Consumer Pharms. Co.*, 960 F.2d at 297-98).  While a jury may believe Morningware's rather nuanced argument, the Court cannot determine, based on the scarce evidence in the record, that no reasonable jury could find that Morningware's Temperature Representation is false or misleading.  Furthermore, Morningware

has not provided any evidence that its oven can cook food at 400 degrees Fahrenheit. As such, the Court denies Morningware's motion as to the Temperature Representation.

### C. The Energy Representation

Morningware asserts that it is entitled to summary judgment on the Energy Representation claim because the evidence conclusively demonstrates that its oven uses 85% less energy and cooks 50% faster than a conventional oven. (Morningware's Mot. at 6.) Specifically, it relies on an unauthenticated letter from Thomas Keenan, a Sales Manager at Morningware, Inc. in Mansfield, Massachusetts, attaching his "calculations" regarding the Energy Representation. (*Id.* at 6-7.) Mr. Keenan's letter and "calculations," however, are inadmissible because they are hearsay and they are not properly authenticated. Therefore, the Court cannot consider them on summary judgment. *See Article II Gun Shop*, 441 F.3d at 496.

The problems with this evidence, however, do not end there. Significantly, the letter is dated February 26, 2010—15 days after Hearthware filed its First Amended Complaint asserting false advertising claims against Morningware. (R. 107.) Moreover, Morningware has provided no basis for the Court to conclude that Mr. Keenan is qualified to perform the calculations that he purports to have completed. Mr. Keenan also provides no bases for the assumptions he made in rendering the calculations. (*See* R. 301-5 ("On this basis, I used 1,200 watts for the Halo Oven and 3,600 watts as an average for the Conventional Oven.").) Finally, Morningware did not produce Mr. Keenan's letter or calculations to Hearthware during discovery, and as such, Morningware cannot use them to support its motion for summary judgment. *See* Fed. R. Civ. P. 37(c). For all of these reasons, Morningware has failed to meet its initial burden of demonstrating that no disputed issues of material fact exist as to Hearthware's claim based on

13

the Energy Representation.  As such, the Court denies Morningware's motion.

## II.     Count III - Illinois UDTPA

Hearthware's third counterclaim is based on the same conduct as its fifth and sixth counterclaims for violations of the Lanham Act, as set forth above.  Because the Court denies Morningware's motion for summary judgment as to Counts V and VI, it also denies the motion with respect to Count III.  *See Morningware,* 673 F. Supp. 2d at 639 ("'Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.'") (quoting *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004).[3]

## III.    Count VII - Common Law Misappropriation

The Illinois Supreme Court has not precisely defined the tort of common law misappropriation, "but it appears to permit the owner of intellectual property to state a claim for wrongful taking or appropriation of the property."  *Nash v. CBS, Inc.*, 704 F. Supp. 823, 834

---

[3]  Morningware argues repeatedly in its reply brief that it is entitled to summary judgment because Hearthware has failed to set forth sufficient evidence to permit a jury to return a verdict in its favor.  (R. 354, Morningware's Reply, *passim.*)  As the moving party, however, Morningware has the initial burden of proving that no disputed issues of material fact exist.  *See Creditor's Committee of Jumer's Castle Lodge*, 472 F.3d at 946; *see also Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 496 (7th Cir. 2011).  Only then does the burden shift to Hearthware, as the non-moving party, to set forth evidence from which a jury could find in its favor.  Because Morningware has failed to meet its initial burden, Hearthware's failure to set forth evidence in its favor does not require the Court to grant Morningware's motion.  That said, however, Hearthware has not set forth any independent evidence demonstrating that Morningware's representations are false or misleading.  At trial, Hearthware has the burden to prove its case by a preponderance of the evidence.

(N.D. Ill. 1989), *aff'd* 899 F.2d 1537 (7th Cir. 1990) (citing *Board of Trade v. Dow Jones*, 90

Ill.2d 109, 74 Ill. Dec. 582, 456 N.E.2d 84 (1983)).[4]  In support of its common law

misappropriation claim, Hearthware alleges that Morningware's Oven infomercial "was

designed to knock-off Hearthware's infomercial by mimicking its ideas, subject matter, content

and style, thereby gaining an advantage, indeed a 'free ride,' in its competition with Hearthware

by avoiding much of the expense incurred by Hearthware in designing its infomercial."

(Hearthware's Counterclaims ¶ 68.)  Hearthware alleges, as an example of how Morningware

has allegedly mimicked Hearthware's infomercial, that Morningware's infomercial opens with

an image of frozen steak thawing in a sink, and then an overweight woman walking in the street.

(*Id.* ¶ 69.)  Hearthware's infomercial allegedly opens with the same images.  (*Id.*)  Hearthware

further alleges that Morningware copied Hearthware's representations that Morningware's

counter top oven resulted in an 85% savings on a user's energy bill as compared with a

conventional oven and that the countertop oven cooks food 50% faster than a conventional oven.

(*Id.* ¶ 70.)  Finally, Hearthware alleges that Morningware "also mimics Hearthware's taglines,"

in that Hearthware uses "touch and go" and "fresh cut to fabulous," while Morningware uses

"confusingly similar phrases," including "touch it and glow" and "frozen to fabulous flavor."

(*Id.*)

        Morningware's argument on this claim is purely legal.  Specifically, Morningware argues

that it is entitled to summary judgment because the Copyright Act, 17 U.S.C. § 101 *et seq.*,

preempts Hearthware's misappropriation claim.  "The Copyright Act preempts 'all legal and

---

        [4]  On appeal, the Seventh Circuit did not address the *Nash* plaintiff's misappropriation
claim or the preemption issue.  *Id.*

equitable rights that are equivalent to any of the exclusive rights within the general scope of

copyright as specified by section 106' and are 'in a tangible medium of expression and come

within the subject matter of copyright as specified by sections 102 and 103.'" *Seng-Tiong Ho v.*

*Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (quoting 17 U.S.C. § 301(a)). Preeemption under

§ 301 requires two elements:

> First, the work in which the right is asserted must be fixed in tangible form and
> come with the subject matter of copyright as specified in § 102. Second, the right
> must be equivalent to any of the rights specified in § 106.

*Id.* (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674

(7th Cir. 1986)).

Hearthware does not dispute that its infomercial (i.e., "the work in which the right is

asserted") is in a fixed tangible form or that it falls within the subject matter of copyright as

specified in § 102. Rather, Hearthware argues that the second element of preemption is not

present in this case.

The Seventh Circuit recently explained that "[t]he second element for preemption is that

the rights in the state law claims be equivalent to the exclusive rights under the Copyright Act."

*Seng-Tiong Ho*, 648 F.3d at 501. The rights of a copyright owner pursuant to § 106 of the

Copyright Act are exclusive "'reproduction, adaptation, publication, performance, and display'

of the copyrighted work." *Id.* (quoting *Toney v. L'Oreal USA, Inc*., 406 F.3d 905, 909 (7th Cir.

2005)). "To avoid preemption, a state law must regulate conduct that is qualitatively

distinguishable from that governed by federal copyright law–i.e., conduct other than

reproduction, adaptation, publication, performance, and display" of a protected work. *Id.* (citing

16

*Toney*, 406 F.3d at 910). Additionally, "the Copyright Act can preempt state law even when the rights are claimed in uncopyrighted or uncopyrightable materials." *Id.*

The Seventh Circuit has not addressed the issue of whether the Copyright Act preempts an action for common law misappropriation under Illinois law. Several courts in this District have held that the Copyright Act preempts claims for common law misappropriation. *See Gannett Satellite Info. Network, Inc. v. Rock Valley Cmty. Press, Inc.*, No. 93 C 20244, 1994 WL 606171, at *4-5 (N.D. Ill. Oct. 24, 1994); *G.D. Searle & Co. v. Philips-Miller & Assocs., Inc.*, 836 F. Supp. 520, 524-26 (N.D. Ill. 1993); *CEO Mktg. Promotions Co. v. Heartland Promotions, Inc.*, 739 F. Supp. 1150, 1152 (N.D. Ill. 1990); *Nash*, 704 F. Supp. at 833-35; *Weigel Broad. Co. v. Topel*, No. 83 C 7921, 1985 WL 2360 (N.D. Ill. Aug. 21, 1985). Other courts, however, have distinguished certain misappropriation claims and held that where the claim is based on the alleged tortfeasor's use of the idea, rather than copying of the idea, the Copyright Act does not preempt the claim. *See, e.g.*, *McNabb Bennett & Assocs. v. Terp Meyers Architects*, No. 85 C 8792, 1987 WL 7817, at *5 (N.D. Ill. Mar. 10, 1987); *Rand McNally & Co. v. Fleet Mgmt. Sys.*, 591 F. Supp. 726, 738-39 (N.D. Ill. 1983). Under either line of cases, the Copyright Act preempts Hearthware's claim in this case because it is based on Morningware's alleged copying and publication of Hearthware's infomercial.

The decision in *Nash*, on which Morningware relies, is instructive. 704 F. Supp. at 833-35. There, the court held that the Copyright Act preempted the plaintiff's misappropriation claim where the plaintiff alleged that the defendant copied the plaintiff's story about notorious conman John Dillinger–specifically, "the way in which [the plaintiff] employs certain facts and

17

evidence to create his own story about Dillinger."[5]  *Id.* at 828.  Following the Seventh Circuit's

methodology in *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663,

674 (7th Cir. 1986), *cert. denied*, 480 U.S. 941, 107 S. Ct. 1593, 94 L. Ed. 2d 782 (1987), the

*Nash* court explained that

> [t]he 'goal' underlying copyright law is the same as that driving the tort of
> misappropriation:  balancing the need to provide economic incentives for
> authorship against the preservation of the freedom to imitate.  Given the identical
> goals of the tort of misappropriation and the Copyright Act, we would be inclined
> to hold that § 301 always preempts the tort of misappropriation.

*Id.* at 834.  Citing the Copyright Act's legislative history, however, the *Nash* court recognized

that Congress "clearly intended to preserve some form of the tort of misappropriation," as

evidenced by the following House Judiciary Committee Report on the 1976 Amendments to the

Copyright Act:

> 'Misappropriation' is not necessarily synonymous with copyright infringement
> and thus a cause of action labeled as 'misappropriation' is not preempted if it is in
> fact based neither on a right within the general scope of copyright as specified by
> section 106 [section 106 of this title] nor on a right equivalent thereto.  For
> example, state law should have the flexibility to afford a remedy (under
> traditional principles of equity) against a consistent pattern of unauthorized
> appropriation by a competitor of the facts (i.e., not the literary expression)
> constituting 'hot' news, whether in the traditional mode of *International News
> Service v. Associated Press*, 248 U.S. 215 (1918) [39 S. Ct. 58, 63 L. Ed. 211], or
> in the newer form of data updates from scientific, business, or financial data
> bases.  Likewise, a person having no trust or other relationship with the proprietor
> of a computerized data base should not be immunized from sanctions against
> electronically or cryptographically breaching the proprietor's security
> arrangements and accessing the proprietor's data . . . .

*Id.* (quoting H. Report No. 1476, reprinted at 17 U.S.C.A. § 301).  In light of the legislative

history, the *Nash* court held that the Copyright Act preempts "all misappropriation claims,

---

[5]  The plaintiff's story centered around his hypothesis that John Dillinger was not killed
outside of the Biograph Theater in Chicago in 1934.  *Id.* at 827-28.

except those similar to the examples cited in the House Report," i.e., "hot news" or data updates. *Id.* at 835.

Hearthware's misappropriation claim in this case is similar to that of the plaintiff in *Nash* because it is based on Morningware's copying, or "mimicking" the "ideas, subject matter, content and style" and "images and phrases" of Hearthware's infomercial, and thereafter publishing the copied portions in its own infomercial. This is the crux of copyright infringement. Indeed, Hearthware's Counterclaims allege specific comparisons of Morningware's infomercial and Hearthware's infomercial. *See G.D. Searle & Co.*, 836 F. Supp. at 525 (where the plaintiff attempted to prove its misappropriation claim by using "side-by-side comparisons" of the works, the claim was based, at least in part, on "improper copying" and was preempted).

Hearthware's argument that its misappropriation claim is based on Morningware's "use" of Hearthware's infomercial–as opposed to its reproduction, adaptation, publication, performance or display–is not persuasive. (R. 344, Hearthware's Memorandum in Opposition to Morningware's Mot. for Summ. J. ("Hearthware's Resp.") at 8-9.) In support, it relies on several cases, none of which involve the type of misconduct that Hearthware alleges in this case. In *Rand McNally*, for example, the plaintiff claimed to have authored and compiled books that contained maps and mileage data. 591 F. Supp. at 728-29. The plaintiff alleged that the defendant used portions of the plaintiff's factual compilations of data from the books in its own works. The court held that the Copyright Act did not preempt the plaintiff's misappropriation claim to the extent it alleged "unfair use of the data and unfair misappropriation of [the plaintiff's] mileage calculation procedures." *Id.* at 739. In contrast, Hearthware does not

contend that Morningware used its factual data or procedures, but rather that Morningware copied portions of its infomercial for publication. Importantly, the *Rand McNally* court also held that the Copyright Act preempted the plaintiff's misappropriation claim to the extent it sought liability for "reproduction of the mileage data." *Id.* That holding cuts against Hearthware's general assertion that misappropriation claims in Illinois focus on use of the work, rather than reproduction, adaptation, publication, performance, or display of the work. (Hearthware's Resp. at 9-10).[6] Given the nature of Morningware's alleged conduct in this case, the Copyright Act preempts Hearthware's common law misappropriation claim. As such, Morningware's motion for summary judgment on Count VII is granted.

## IV. Count VIII - Illinois Consumer Fraud Act

In Count VIII of its Counterclaim, Hearthware avers "[a]s stated in Hearthware's Second, Third, Fifth and Sixth Claims for Relief above, the aforementioned acts by Morningware constitute violations of Section 43(a) of the Lanham Act and, thus, also constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act." (Hearthware's Counterclaims ¶ 75.) On November 18, 2010, the Court granted Hearthware's unopposed motion for dismissal Counts II and IV of its Counterclaims with prejudice. (R. 147, 149.) The

---

[6] Hearthware's reliance on *Stephen & Hayes Construction, Inc. v. Meadowbrook, Inc.*, 988 F. Supp. 1194 (N.D. Ill. 1998) is likewise misplaced, as the plaintiff in that case did not assert a common law misappropriation claim, and that case does not contain any discussion or analysis of whether the Copyright Act preempts claims for misappropriation. Even assuming that Hearthware seeks to analogize its misappropriation claim to the unfair competition claim that the plaintiff in *Meadowbrook* asserted, *Meadowbrook* is nevertheless unhelpful because the court did not substantively discuss whether the Copyright Act preempts that claim. *See id.* at 1200 (noting that the defendant "treats the unfair competition claim as the common law equivalent of the UDPTA claim and thus analyzed the two counts as if they were one. The court makes no finding as to whether it agrees with [the defendant's] reasoning . . . .").

Court grants Morningware's motion for summary judgment on Count VIII only to the extent that Count VIII is based on Count II.

## CONCLUSION

For the reasons explained above, the Court grants Morningware's motion for summary judgment on Count VII of Hearthware's Counterclaims and on Count VIII to the extent that Count VIII is premised on Count II. The Court denies Morningware's motion for summary judgment on Counts III, V, and VI of Hearthware's Counterclaims.

**Dated: September 4, 2012**

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

21